# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7884 | **DATE** | 6/13/2003 |
| **CASE TITLE** | Alphonse L. Perez, et al. vs. Radioshack Corp. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion (3-1) to proceed with notice is granted. Status conference is set for Friday, June 27, 2003, at 9:30 a.m. for purposes of reviewing objections, if any, to Plaintiffs' proposed form of notice. Parties are urged to meet and confer prior to the June 27 status regarding that matter and to discuss possible settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 4 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JUN 1 8 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | U.S. DISTRICT COURT CLERK | 6/13/2003 | /0/ |
| | | | | date mailed notice | |
| ETV | courtroom deputy's initials | | 03 JUN 13 PM 5:04 | ETV | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



JUN 1 6 2003

| | | |
|---|---|---|
| ALPHONSE L. PEREZ, DAVID D. TIBBETS, DOUGLAS G. PHILLIPS and ASHER E. WARSO, individually, and on behalf of all other similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 02 C 7884 |
| RADIOSHACK CORPORATION, | ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Alphonse L. Perez and Douglas G. Phillips work or have worked as "Y store"

managers for Defendant RadioShack Corporation, routinely logging more than 40 hours of work

per week. They bring this action under the Fair Labor Standards Act, 29 U.S.C. § 207 *et seq.*

("FLSA" or "the Act"), for recovery of overtime pay. Plaintiffs seek to proceed in a representative

action under § 216(b) of FLSA on behalf of Y store managers across the nation.

Importantly, as Plaintiffs take pains to explain, they are not seeking class certification under

Rule 23. Under that Rule, the court must assess whether the proposed class meets the test of

numerosity; whether common questions of law and fact are at issue; whether the named plaintiffs'

claims are typical; and whether the named plaintiffs are adequate class representatives. Under 29

U.S.C. § 216(b), plaintiff need only show that he is suing his employer for himself and on behalf

of other employees "similarly situated," a requirement that courts have characterized as

"considerably less stringent" than the Rule 23 requirements. *See Grayson v. K Mart Corp.*, 79 F.3d

1086, 1096 (11th Cir. 1996), citing *Flavel v. Svedala Indus. Inc.*, 875 F.Supp. 550, 553 (E.D.

Wis.1994); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975). No prejudice can

result to class members who do not participate actively in the litigation, Plaintiffs here insist,

because an FLSA class operates as an "opt-in" class, meaning that only persons who have

*/0 /*

affirmatively chosen to participate will be bound by the outcome here.

The court nevertheless had grave concerns about the propriety of proceeding to issue notice to potential class members and inviting them to opt in. Based on a cursory reading of the Act, the court understands that persons responsible for retail store management are likely exempt from the Act's overtime provisions. To obtain more detailed information concerning the responsibilities of Mr. Perez and Mr. Phillips, the court conducted a brief hearing on April 17, 2003.[1]

As described below, the evidence presented in that hearing and in depositions is at best, from Plaintiffs' perspective, equivocal. The law places the burden of proving exemption from FLSA requirements squarely on the employer, however. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 393-94 (1960). Further, the matter is not ripe for summary judgment; Plaintiffs objected to any evidentiary proceeding at this stage and observed that they have not yet had the benefit of the discovery that ordinarily, in an action such as this one, would postdate notice to potential class members. At this stage, the court declines to interfere with the standard procedure. The court will permit notice to proceed, cautioning that a resolution of this case on the merits may well not be favorable to the class members' interests.

## LEGAL STANDARDS

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, provides that an employer must compensate an employee for any hours worked over 40 in a week at a rate of one and one-half times the employee's regular hourly rate of pay. The requirement that workers earn overtime pay is subject to a number of exceptions, however, one of which is the exemption for so-called "executive" or managerial employees.

---

[1]     Defendant RadioShack agreed to tolling of the statute of limitations; thus, the brief delay while the court considers the evidence presented at the hearing did not operate to prejudice Plaintiffs or any of the other Y store managers they seek to represent. The court notes, further, that even absent formal notice, many such managers have learned about the pendency of this action and have submitted consent forms to Plaintiffs' counsel.

Federal regulations establish two tests for determining whether an employee qualifies for the exemption, commonly referred to as the "long test" and the "short test." 29 C.F.R. §§ 541.1(f), 541.119. Because Perez, Phillips, and the other Y store managers they seek to represent earn more than $250 per week, both sides agree that the FLSA's "short test" for exemption applies. Under that test, the employee is exempt if his or her "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, . . . ." 29 C.F.R. § 541.1(f). Determining whether this test is met "is not difficult . . . [i]n the vast majority of cases," the federal regulations optimistically assert. The regulations identify the following activities as exempt work performed by managers:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b). To determine whether a particular employee has management as his or her primary duty, the court must focus on that employee's actual activities. *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 689 (6th Cir. 2002). The amount of time that the employee spends performing managerial duties is a "useful guide," but is "not the sole test," and an individual may spend less than 50% of his time on management duties but nevertheless have management as his primary duty. The regulations explain that the determination of whether an employee is exempt is based on the particular facts of the individual's employment, not on general descriptions of his or her job duties. *Id.* at 688-89, citing 29 C.F.R. §§ 541.103, 541.207(b).

3

# FACTS[2]

Plaintiffs Phillips and Perez were managers of Y stores in RadioShack's Chicago market. During the relevant time period, Phillips and Perez reported to Michael Broe, who became RadioShack's district manager in November 2000. As district manager, Broe had supervisory responsibility for some 35 stores. Although Plaintiffs emphasize their responsibility for sales, they also acknowledge that each of them was the highest-ranking employee on site at the store to which he was assigned. They also acknowledge that they were responsible for tasks characterized as managerial, including interviewing potential sales associates; reviewing daily, weekly, and monthly productivity reports generated by RadioShack's headquarters; and reviewing the time cards completed by staff in their stores. Perez and Phillips were also responsible for making work assignments and for conducting sales meetings with the other sales associates in their stores, at least once per month on Saturday mornings. They assigned work schedules for sales associates in their stores, scheduled break time, and approved requests for days off. Store managers were responsible for completing monthly evaluations for each of their sales associates as well as initial discipline and counseling of the associates on such matters as tardiness, poor performance, dress code, or customer service issues. Perez testified that he was responsible for protecting RadioShack's inventory and that he expected to be contacted at home in an emergency situation. He acknowledged, further, that he was expected to reconcile the inventory reports, to deal with customer complaints, to keep track of the status of training of his sales staff, and to make recommendations for product orders for his store.

In addition to managing a store, Perez had responsibilities as a "team leader" – a store manager who conveyed information from the district manager to the managers of four other RadioShack stores. Once a month, Perez would attend day long meetings with other members of

---

[2]     The factual statement set forth here is based upon the court's own notes of the testimony of Phillips, Perez, and Broe, and therefore does not include citations to a transcript.

a leadership group in RadioShack's Chicago district. Further, in the past four years, Perez himself trained other sales associates to become managers. Perez testified that he sought the position of manager in order to make more money. A manager's income is based in part on the revenue of the store he or she manages, and both Perez and Phillips earned substantially more than their sales associates: Perez earned approximately $19 per hour, when his sales associates averaged only $7 per hour. Phillips, similarly, earned $17 per hour, compared with only $8 for his sales associates.[3]

As discussed below, the courts often find retail store managers in similar circumstances exempt from the FLSA overtime pay provisions. Plaintiffs nevertheless insist that management is not their primary duty as Y store managers. Instead, Plaintiffs assert, their chief responsibility, like that of their subordinate sales associates, was to sell RadioShack merchandise. Plaintiffs contend that RadioShack's own policies confirm that sales, not management, was their primary duty. RadioShack's "Manager in Training" manuals for 1999, 2000, and 2001 all describe the "SEVEN-ONE-ONE Method of Management," which directs the manager to schedule "7 hours of selling, 1 hour on training, and 1 hour of paperwork each day." (Excerpts from Manager in Training Manuals, Plaintiff's Exhibit 1.) The first sentence of each module of the manager training course exhorts, "SELL!! This is one of the most important responsibilities of an Assistant Manager and of a Store Manager." (Excerpt from Manager Training Program Materials, Plaintiff's Exhibit 10.) The manual explains, further, that "[i]f the 1 hour spent on paperwork and administrative is done before the store opens, you will get 10 times the work done." (Plaintiff's Exhibit 1.) RadioShack encourages its managers to utilize what RadioShack calls "BIG ROCK" scheduling; that is, the manual explains, "Store Managers should 'block' 40 hours of 'selling time' for themselves every

---

[3]     The court is uncertain whether this hourly rate assumes a 40 hour week or is instead based upon the longer hours Plaintiff actually worked. In either case, Plaintiffs earned substantially more than their subordinates.

week." (Excerpt from Manager in Training Manuals, Plaintiff's Exhibit 2a.) Alphonse Perez testified that of the 60 hours per week he worked, he devoted 80% of his time to selling.

Defendant argues that when a manager spends time on the sales floor, he or she remains a manager and can supervise and train subordinates by teaching and example. Perez acknowledged that while engaged with a customer, he can continue to observe the merchandise and the activities of other associates, monitor the cleanliness of the store and be on alert for shoplifters. He nevertheless specifically denied that it is possible to train employees while focusing on his customers. Perez pointed out, further, that District Manager Broe instructed him to devote more time to sales and predicted that Perez's increased presence on the sales floor would generate more business for the store.

Broe demonstrated his expectations that Plaintiffs would focus on sales over management in other ways, as well, Plaintiffs assert. According to Perez, Broe "absolutely" always attended meetings at which managers were recognized for achieving their store sales goals and their personal sales goals. No such public recognition was ever accorded for any accomplishment – effective motivation of subordinates, training, supervision, for example – other than sales. And, although Broe's written evaluations of Perez's performance occasionally criticized non-sales aspects of Perez's performance, he never threatened discipline for any shortcoming other than Perez's failure to meet personal sales goals. The court notes that the three "store visit reports" offered by Plaintiffs as exhibits confirm that testimony in part; these reports, apparently prepared by District Manager Michael Broe, emphasized sales expectations and threatened termination absent some improvement in sales. The court notes, however, that the reports did also include comments on or criticism of other aspects of Phillips' and Perez's performance. (Store Visit Reports, Plaintiffs' Exhibits 3a, 3b, 3c; Senior Manager Counseling Letter, Plaintiff's Exhibit 4a.)[4]

---

[4]     For example Mr. Broe's August 9, 2001 memorandum commented on the
(continued...)

Broe acknowledged that managers, like sales associates, are expected to make sales to at least four customers per hour. Plaintiffs note, in addition, a May 2001 memo from Jim Bradley, the regional sales representative, to store managers. Bradley's memo directed store managers to work a minimum of 48 hours per week. It stated, further, that "Friday and Saturday are PURE SALES DAYS. The only thing you should be doing is selling, especially on Saturday." (May 25, 2001 Memo from RSM Jim Bradley, Plaintiff's Exhibit 5e.)

Perez testified that the non-sales aspects of his work as a Y store manager involved little exercise of discretion. RadioShack's corporate headquarters generated daily "flash reports" of the store's sales and Perez's own personal sales. Headquarters also produced weekly memos concerning special sales and promotions. Perez testified that he put those reports together, read them, highlighted them, and attached them to a clipboard in the front of the store for his staff to review. The process took just a "couple of minutes" each week, according to Perez. Perez testified that a store manager has no discretion concerning advertisement; the types of merchandise sold in the store; pricing; store hours; the store's dress code; or the amount of petty cash to be kept on hand. Phillips testified that he did have authority to reduce prices of merchandise by 10% where the goods were shop-worn or damaged; but he noted that sales associates had the authority to do so, as well. Rates of pay are set by RadioShack's corporate office, not by store managers. Perez claimed to have no contact with RadioShack's vendors or their delivery staff. Managers have no authority to lease space and are not responsible for paying rent. The manager does not order

---

[4](...continued)
requirement that Phillips' sales staff attend meetings; that Phillips prepare written performance evaluations of their work each month; and that Phillips ensure that his employees had "complete certification". (August 9, 2001 Memorandum, Plaintiff's Exhibit 4a.) Broe's Store Visit Report of January 31, 2002, criticized Phillip's failure to set up advertising material; his failure to display merchandise properly; his mispricing of two Verizon phones; and the need for the backroom to be straightened. (Store Visit Report, January 31, 2002, Plaintiff's Exhibit 3a.) A report to Perez on August 23, 2002 offered this praise: "You take very good care of your people and I think you really try to look out for the stores around you." (Store Visit Report, August 23, 2002, Plaintiff's Exhibit 3c.)

inventory; instead, 95% of a RadioShack store's inventory needs are determined by a program operated at headquarters which generates orders automatically. A manual provides detailed instructions concerning store operations, and provides instructions for handling a myriad of situations, including, for example, clean up of spills and leaks. Computers, shelving, fixtures, and filing cabinets are all supplied by RadioShack. Even the system for filing records is dictated by RadioShack's corporate policy.

With respect to staff scheduling, Perez maintained he only "plug[s] in names" to a schedule assigned by the district sales manager. Perez had no authority to schedule sales associates for overtime work or otherwise adjust the number of hours they worked. He could approve requests for individual days off, but had no authority to approve his associates' requests for vacation time. Every RadioShack employee "clocks" in and out on the store's computer system. RadioShack's corporate office generates records of each worker's time, and Perez testified that he simply verified those reports by comparing them with the workers' time sheets and sales records. The process takes no more than 15 to 20 minutes per week.

A manager's training activities, too, are largely dictated by corporate policies, according to Plaintiffs. RadioShack headquarters supplies manuals and videos for associate training; Perez testified that he does little more than direct the associates to use the book and video and then review a checklist of training activities. He devotes no more than 30 minutes to this instruction process with any new associate. Similarly, when Perez is responsible for supervising a "manager in training," that individual is required to review a training manual, some videos, and a reference book, all provided by the RadioShack home office. Perez claimed his own role in this process took no more than three to four minutes. District Manager Broe acknowledged that one sales associate can train another, at least for the short term, on such activities as using the cash registers and setting up displays.

Plaintiffs note, further, that many of the tasks that Defendant contends are managerial are

8

in fact performed by sales associates as well as by store managers themselves. Sales associates assist with arranging the display of products and reading materials; pricing the inventory; handling merchandise shipments; clean-up; filing; and tracking inventory, using bar code scanner "guns" to count products. Sales associates, like managers, are authorized to make bank deposits, accept deliveries, and file documents in the RadioShack filing system. Not only a manager, but any sales associate is authorized to approve a refund to a customer up to $50.00. Perez testified that he himself does not make any decisions concerning the placement of product in the store; instead, he follows the "Plan-o-Grams" prepared by RadioShack's corporate headquarters. Nor does Perez make determinations about the work to be done; he characterized his role as no more than determining that the tasks set forth on RadioShack's checklist are completed. Although managers are responsible for conducting monthly meetings, the agenda for those meetings came from RadioShack headquarters. An August 9, 2001 memorandum from District Manager Michael Broe to Douglas Phillips lists Broe's expectations for Phillips, including Broe's direction that Phillips conduct a Saturday morning meeting "every time there is one on the calendar with total adherence to the published agenda." (August 9, 2001 Memorandum, Plaintiff's Exhibit 4a.) Perez acknowledged that he did occasionally add items to the agenda, but he testified his own input accounted for no more than five minutes of the 45-minute long meetings.

Perez minimized his role in hiring, as well. He does recommend sales associates for promotion to store manager positions, but those decisions are based primarily on the associates' sales performance. In his ten years as a Y store manager, Perez testified, he has never hired any one to work for RadioShack and has no authority to do so. Although Perez did participate in company "open houses," and conduct brief interviews, he followed a script when doing so and then forwarded the candidate's application and his own recommendations to the district manager. Phillips testified that he had never interviewed job candidates and did not recall even recommending any candidate to his district manager. Managers have no authority to award raises

9

or bonuses to his staff. Nor does a manager have the power to terminate an employee on his own.

Michael Broe testified concerning a variety of matters on which store managers do exercise discretion. Broe noted that he visited store managers only once every 60 days, though he did speak to them nearly every day for 5 to 20 minutes. He asserted that the "Plan-o-Gram" for store layout is only a suggestion, not a requirement. Managers are responsible for initial discipline of workers and for their evaluations. According to Broe, two-thirds of an associate's performance evaluation is based on the manager's observations. A manager exercises discretion in dealing with conflicts between associates and with customer complaints. When merchandise is moved from one RadioShack store to another, the store managers must verify the credit transfer. The store manager is expected to motivate sales associates and is free to use certificates or other public recognition to do so. Broe testified that he has hired associates, sight unseen, on Perez's recommendation.

Over Defendant's objection, Plaintiffs elicited testimony from Mr. Broe concerning the distinctions between RadioShack's Y stores and its V stores, whose store managers are paid overtime. In his role as a district manager, Mr. Broe supervised both Y store and V store managers. He explained that a key difference between the two types of stores relates to their sales volume; Y stores have sales in excess of $400,000 per year, while V store sales fall below that number. V stores generally have fewer employees and fewer customers, and V store managers never have assistant managers in training assigned to work with them. The two types of stores sell the same products, but Y stores typically have a wider range of those products. RadioShack generates daily "flash reports" for Y stores, but V stores receive sales reports only on a weekly basis. Broe acknowledged that the same store operating manual is used for both Y stores and V stores, however; that a manager in training can be assigned to either a Y or a V store on completion of his or her training; and that a V store manager can be transferred to a Y store without any additional training. He acknowledged, further, that the inventory process in the two types of

10

stores is the same, and that the main job for the manager of either of the two types of stores is to sell merchandise.

## ANALYSIS

In arguing that the manager of a retail store is exempt from FLSA's overtime pay requirements, Defendant has the weight of several reported decisions on its side. In addition, Defendant relies on proposed Labor Department regulations which, in Defendant's view, confirm the conclusion that Plaintiffs are not entitled to recover overtime pay. Plaintiffs urge that the court not consider proposed regulations, and argue that the case law is in fact more nuanced than Defendant suggests.

Plaintiffs face an uphill battle in arguing that management was not their primary duty. As Defendants emphasize, store managers are frequently held to be exempt under the executive category. *See, e.g., Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (manager of gas station-convenience stores exempt); *Donovan v. Burger King Corp.*, 675 F.2d 516, 520-22 (2d Cir.1982) (fast food restaurant assistant managers earning more than $250 per week exempt); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982)(same); *Thomas v. Jones Restaurants, Inc.*, 64 F. Supp. 2d 1205 (M.D. Ala. 1999) (manager of fast food restaurant); *Stricker v. Eastern Off Road Equipment, Inc.*, 935 F. Supp. 650 (D. Md. 1996) (manager of truck and off-road vehicle equipment retail outlet store); *Masilionis v. Falley's, Inc.*, 904 F.Supp. 1224, 1229-30 (D.Kan.1995) (produce manager of a grocery store); *Meyer v. Worsley Cos.*, 881 F.Supp. 1014, 1017-21 (E.D.N.C.1994) (Scotchman convenience store manager); *Horne v. Crown Central Petroleum, Inc.*, 775 F. Supp. 189 (D. S.C. 1991) (manager of convenience store).

Plaintiffs make little effort to distinguish these authorities. They do observe, however, that their actual responsibilities are more significant than their job title in determining whether the exemption applies. *Ale*, 269 F.3d at 689, citing 29 C.F.R. §§ 541.103, 541.207(b). The factors

11

pertinent to the determination include the time spent on managerial duties; relative importance of managerial duties as compared with other types of duties; the frequency with which they exercised discretion; their relative freedom from supervision; and the relationship between their salaries and the wages paid other nonexempt employees. 29 C.F.R. § 541.103. The court will address these factors in turn.

## A.     Time Spent on Managerial Duties

Plaintiffs focus their attention on this first factor. They emphasize their own estimates that non-managerial work accounted for at least 80% of their time. The regulations and case law explain that, in assessing whether a worker's primary duty is management, the percentage of time is important but not controlling. In its initial opinion in *Murray v. Stuckey's,* for example, the Eighth Circuit had reversed the district court's finding that plaintiff store managers were exempt, observing that the fact that the manager spent 90 percent of his time on non-managerial duties was "not a controlling factor under the regulations." *Murray v. Stuckey's, Inc.,* 939 F.2d 614, 618 (8th Cir. 1991).

In *Donovan v. Burger King,* the First Circuit upheld a finding that assistant managers who spent the majority of their time performing the same work as hourly employees were nevertheless exempt: "The person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions." 672 F.2d at 227. On the other hand, the Tenth Circuit affirmed a finding that a bakery manager within a grocery store was not exempt despite the fact that he was responsible for the entire bakery operation at the particular facility, maintained inventory control, ordered supplies and materials, reviewed employee performance, made hiring and firing recommendations, and kept records of sales. *Dye v. Family Market, Inc.,* No. 81-1331, 1982 WL 19205 (10th Cir. Feb. 22, 1982). The Court of Appeals noted that plaintiff spent 90 percent of his time doing ordinary production work

12

side by side with the bakers he supervised and was paid at a rate almost indistinguishable from his subordinates.[5]

The Department of Labor's FLSA regulations explain that an employee who does not spend more than 50% of his time on managerial duties might nevertheless have management as his primary duty. Such a finding would be appropriate, for example, where the worker "has broad responsibilities similar to those of the owner or manager of the establishment" and, while engaged in production or sales work, continues to supervise other employees, direct the work of warehouse and delivery men, approve advertising, order merchandise, handle customer complaints, and authorize payment of bills. The court notes here that Y store managers were expected to devote seven of every nine hours to sales activity, suggesting that managerial duties accounted for far less than 50% of their work time. RadioShack urges that the managers are nevertheless exempt because they were expected to exercise the broad responsibilities of an owner, but this appears to be an overstatement. With respect to at least some aspects of their performance, Perez and Phillips testified, they were reminded to "execute, don't interpret." They did not in fact direct the work of warehouse and delivery men, approve advertising, order merchandise, or authorize payment of bills; and while they did handle customer complaints, they testified credibly that this was a responsibility of all sales associates.

In *Stein v. J. C. Penney Co.*, 557 F. Supp. 398 (W. D. Tenn. 1983), plaintiff store manager complained that he devoted much of his time to manual labor, but the court determined that he was an exempt employee. The court observed that defendant expected plaintiff to delegate that work

---

[5] Our own Court of Appeals has not formally weighed in on this issue, but the court notes one recent unreported decision cited by Plaintiffs. In *Jackson v. Go-Tane Servs, Inc.*, No. 02-1468, 2003 WL 151270 (7th Cir. Jan. 21, 2003), plaintiff was the manager of a car wash, who scheduled workers and performed training and discipline, but had little independent authority beyond making recommendations regarding hiring, firing, and rates of pay. Despite his title, plaintiff performed a significant amount of non-managerial tasks, accounting for well over 50% of his time, and was paid at a rate only slightly higher than other staff. The Court of Appeals affirmed a finding that plaintiff was entitled to recover pay for his overtime work.

to others, devoting his chief attention to management activities, such as developing merchandise plans, purchasing merchandise, and planning its presentation. Plaintiffs here, in contrast, had no direct responsibility for purchasing or planning the presentation of merchandise; and the Manager in Training manual makes clear that their chief responsibility was to sell RadioShack's products. The court concludes that the "amount of time" factor weighs in favor of Plaintiffs.

## B.      Relative Importance of Managerial Activities

The second factor in the court's assessment is the relative importance of managerial tasks compared with Plaintiffs' other duties. Plaintiffs believe this second factor militates in their favor, as well, but the court is less certain. Plaintiffs note the evidence that in evaluating their performance, Mr. Broe focused his attention on their sales performance. Certainly Broe expected Plaintiffs to achieve substantial sales goals. As noted, however, his memos to Phillips and Perez did make mention of other aspects of their performance as well. Further, his communications with Phillips and Perez can fairly be interpreted as evidence that he viewed his managers as responsible for the sales performance of the stores they managed, not merely for their own sales effort.

On this limited record, the court concludes the "relative importance" factor is evenly balanced and favors neither side.

## C.      Frequency of Exercise of Discretion

The frequency with which Plaintiffs exercise discretionary powers is the third factor to be considered. Here, Plaintiffs emphasize the detailed operations manual which, they argue, cabins their discretion to an overwhelming degree. The First Circuit suggests that the fact that RadioShack maintains a detailed manual and close control over individual store operations does not negate a conclusion in Defendant's favor on this factor, however. *Donovan v. Burger King Corp.*, 672 F.2d at 226 ("Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'") Nor was the Eighth Circuit moved by the existence of a detailed

14

operations manual:

> Most if not all nationwide companies with multiple outlets establish standardized procedures and policies to guide individual store managers. This practice may circumscribe but it does not eliminate the discretion of the on-site manager of an isolated store who is responsible for day-to-day operations. Similarly, active supervision and periodic visits by a regional manager do not eliminate the day-to-day discretion of the on-site store manager.

*Murray v. Stuckey's, Inc.*, 50 F.3d at 570.

Although the existence of the RadioShack manual does not defeat Defendant's position on this factor, the court notes that the managers in this case arguably have fewer decision-making responsibilities than those in other cases. Unlike the exempt plaintiff in *Thomas v. Jones Restaurants, Inc.*, Plaintiffs did not have the authority to hire or fire employees, determine the work techniques to be used, or balance the books. 64 F. Supp. 2d at 1206-7. The exempt store manager in *Horne v. Crown Central Petroleum* also had the duty of recruiting, hiring and firing employees and setting their vacation time, ordering merchandise, and "checking in" vendors. 775 F. Supp. at 190. Store managers in *Murray v. Stuckey's*, similarly, hired other workers, ordered inventory, and had "exclusive authority to grant discounts and markdowns." 50 F.3d at 570.

Defendant RadioShack emphasizes that Plaintiffs were "in charge" of the day to day operations of their stores, and the court believes this factor is a significant one. Indeed, one court appeared willing to jettison analysis of the factors identified in the regulations (and discussed here), observing, "we can reach the same conclusion in most cases by simply deciding if the employee was 'in charge.' " *Sturm v. TOC Retail, Inc.*, 864 F. Supp. 1346, 1353 (M.D. Ga. 1994) (holding convenience store managers held exempt from FLSA overtime provisions). Despite the fact that RadioShack managers arguably have fewer responsibilities than those of retail managers in some other cases, the court concludes this second factor weighs slightly in favor of Defendant.

## D.    Freedom from Supervision

The fourth factor for the court's consideration is freedom from supervision. In this case, as

in *Donovan v. Burger King Corp.*, 675 F.2d 516, 522 (2nd Cir. 1982), "for the great bulk of their working time," Plaintiffs are in charge of the retail facilities they manage. RadioShack district managers visit the individual retail stores only once every 60 days. District managers do in addition have nearly daily telephone contact with store managers, but the *Burger King* court found this fact irrelevant: "Being available for advice is in no sense the exercise of supervision." *Id.* at 521. In *Horne*, the plaintiff manager's supervisor visited far more often than every 60 days, but the court still concluded plaintiff was relatively free from supervision: "Horne's supervisor came by the store only a few times a week. Generally, it was up to Horne to solve problems and make decisions when the need arose." 775 F. Supp. at 191. The fact that plaintiff Horne was responsible to make decisions about store staffing and security confirmed the court's conclusion that she was an exempt worker. *Id.*

Other courts, likewise, have observed that active supervision and periodic visits by a higher-level manager do not necessarily eliminate the discretion of the on-site store manager. *See Murray*, 50 F.3d at 570, citing *Donovan v. Waffle House, Inc.*, 26 Wage & Hour Cas. (BNA) 868, 874, 1983 WL 2108 (N.D. Ga.1983); *Marshall v. Sally Beauty Co.*, 25 Wage & Hour Cas. (BNA) 672, 1982 WL 2184 (E.D. La.1982). Recognizing Plaintiffs' contention that they had little real control or authority, the fact remains that they were alone in charge of their stores for many days without the physical presence of any supervisor. This factor weighs in favor of Defendant.

## E.    Relationship Between Plaintiffs' Salaries and Wages Paid to Others

This final factor bears brief discussion. The court is uncertain of the precise method for calculating Y store manager salaries, but it is undisputed that their earnings are based, in part, on the sales productivity of the stores they manage and that they earn considerably more than non-managerial sales associates. Plaintiff Perez testified that he sought promotion to management in order to earn more money, and there was no suggestion that he does not in fact earn more money

16

than he did as a sales associate. The court presumes this higher pay is intended to compensate Plaintiffs for greater responsibilities. This fifth factor weighs in favor of Defendants.

## CONCLUSION

In assessing the evidence, the court notes, again, the unusual procedural posture of this matter. Plaintiffs' FLSA complaint would, in the ordinary course, generate prompt notice to potential class members, an opt-in period, and then discovery prior to a hearing on the issue of FLSA exemption. The court delayed that process to explore its concern that Plaintiffs themselves are not covered by FLSA overtime provisions. Having considered the evidence, the court remains uncertain. Plaintiffs were in charge of their stores, had only sporadic direct contact with supervisors, and earned substantially more than their subordinate sales associates. On the other hand, they devoted a large percentage of their time to sales activities, and their sales prowess was emphasized in RadioShack's assessment of their performance. Finally, the court notes that Defendant has offered no explanation for its practice of paying for the overtime hours of V store managers, whose training and responsibilities were largely similar to those of Y store managers. Defendant bears the burden of proof on this issue, and Plaintiffs have had the benefit of only limited discovery.

The court concludes that the opt-in class notice should proceed. Plaintiffs' motion (No. 3-1) to proceed with notice is granted. Again, however, the court cautions that on a completely developed record, Defendant may well be able to demonstrate that Y store managers are exempt from the overtime provisions of FLSA.

ENTER:

Dated: June 13, 2003

REBECCA R. PALLMEYER
United States District Judge

17