UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALPHONSE L. PEREZ, DOUGLAS G. PHILLIPS, individually and on behalf of an "opt in" class of others, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 02 C 7884 |
| | ) | |
| RADIOSHACK CORPORATION, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiffs are members of an "opt-in" class of persons who work or have worked as "Y store" managers for Defendant RadioShack Corporation, routinely logging more than 40 hours of work per week. They bring this action under the Fair Labor Standards Act, 29 U.S.C. § 207, *et seq.* ("FLSA"), for recovery of overtime pay. The FLSA requires employers to compensate their employees for any hours worked over 40 in a week at a rate of one and one-half times the employee's regularly hourly rate of pay. This requirement contains an exemption for "executive" or managerial employees, whose primary duties are managerial and who customarily and regularly supervise two or more other employees. In April 2003, the court heard evidence in order to determine the propriety of allowing Plaintiffs to proceed as an "opt-in" class. During that hearing, Plaintiffs presented evidence that management was not their primary duty, and thus that they did not qualify for the executive exemption from FLSA's overtime provisions. In the resulting opinion, the court expressed its view that "persons responsible for retail store management are likely exempt from the Act's overtime provisions," but agreed to allow Plaintiffs to proceed as an "opt-in" class. The ensuing discovery

revealed that at least some subset of the opt-in class members appeared not to meet the second of the two prongs for exemption in that they did not supervise two or more employees. Plaintiffs now move for partial summary judgment in favor of those class members who were classified as exempt under the FLSA despite not regularly supervising two or more employees. Defendant moves for a declaration that it has satisfied this "subordinate supervision" requirement of the exemption with respect to all class members. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part and Defendant's motion is denied.

## FACTUAL BACKGROUND

Plaintiffs are an "opt-in" class of people who work or have worked as managers at RadioShack "Y stores."[1] Y stores are RadioShack retail stores that have annual sales volume of $500,000 or greater. (Plaintiffs' Local Rule 56.1(a) Statement of Uncontested Facts, hereinafter "Pls.' 56.1(a)," ¶ 9.) In contrast, "V stores" are RadioShack retail stores with less than $500,000 annual sales volume. (Id.) Managers at both Y and V stores are frequently called upon to work more than 8 hours a day and/or 40 hours per week. (Id. ¶ 11.) When they do, managers at V stores receive "time and a half" pay for any hours worked over 40 in a given week, as required by the FLSA. (Id.) Managers of Y stores do not receive overtime compensation, because RadioShack has designated their position as exempt under the FLSA. Id. ¶ 8.)

As discussed in the court's previous memorandum order and opinion, managers (of both Y

---

[1]    The FLSA contains an "opt-in" provision, allowing an employee to bring an action against an employer on behalf of himself and any other similarly situated employees. 29 U.S.C. § 216(b). All plaintiffs in such an action must affirmatively "opt-in" to the suit (in contrast to class actions brought under Rule 23, which require potential plaintiffs to "opt-out" if they do not wish to be a class member). See *Vanskike v. Peters*, 974 F.2d 806, 812-13 (7th Cir. 1992), citing *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982).

and V stores) are the highest-ranking employees on site at the stores to which they are assigned. *Perez v. RadioShack Corp.*, No. 02 C 7884, 2003 WL21372467, *2 (N.D. Ill. June 13, 2003.) The managers are responsible for tasks generally characterized as managerial, including interviewing potential sales associates; reviewing daily, weekly, and monthly productivity reports generated by RadioShack's headquarters; and reviewing time cards completed by store staff. In addition, managers are responsible for making work assignments, assigning work schedules, and completing monthly evaluations of sales associates. Managers earn substantially more than their subordinates; named Plaintiffs Perez and Phillips, for example, earned approximately $19 and $17 per hour, when their sales associates averaged only $7 and $8 per hour.[2]

RadioShack employs both full- and part-time sales associates. Pursuant to corporate policy, employees averaging 32 or more hours per week are classified as full-time. (Addendum to RadioShack Team Answer Book, Ex. 5 to Def.'s Motion for Partial Summary Judgment.) Full-time employees are entitled to health care and vacation benefits. (Memo from Evelyn Follit, dated Apr. 23, 2003, Ex. 4 to Def.'s Motion for Partial Summary Judgment, at 2.) Employees averaging less than 32 hours per week are classified as part-time. (Ex. 5 to Def.'s Motion for Partial Summary Judgment.) Although not entitled to health care benefits, part-time employees averaging 20 or more hours per week are entitled to vacation benefits. (*Id.*)

Plaintiffs argue that nearly half of the opt-in class members do not qualify as exempt because they do not "customarily and regularly" supervise two or more full-time employees. In support of this

---

[2]      To be clear, both Plaintiffs Perez and Phillips were paid on a salary basis, as required for application of the executive exemption. *See Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 533 (7th Cir. 1999), *citing* 29 C.F.R. § 541.214. These $19 and $17 per hour figures represent the approximate equivalent value of their salaries, in hourly terms.

allegation, Plaintiffs offer a report setting forth the total number of subordinate employee hours worked on a weekly basis in the stores of 2978 of the 3288 opt-in class members.[3] (Ex. 1 to Pl.'s Statement of Uncontested Facts.) According to Plaintiff, this report was prepared and adapted from records turned over by RadioShack during discovery. (Pl.'s 56.1(a), ¶ 13.) According to Plaintiffs, these records indicate that 1521 opt-in class members supervised 80 subordinate hours or more per week less than 87 percent of the time while employed as a Y store manager. (Id. ¶ 14.) Defendant disputes both the validity of this data and Plaintiff's conclusions on a number of grounds. Specifically, Defendant contends the data reveals that only 726 class members failed to meet the 80-hour subordinate supervision requirement 87 percent of the time or more and that the class as a whole met the 80-hour requirement 93.6 percent of the time. (Def.'s 56.1(a), ¶ 25.)

## DISCUSSION

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In a motion for partial summary judgment, the court "merely decides one or more issues in advance of trial." *Reeves v. Federal Reserve Bank*, No. 00 C 5048, 2003 WL 21361735, *8 (N.D. Ill. June 12, 2003), *citing ODC Communications Corp. v. Wenruth Invs.*, 826 F.2d 509, 515 (7th Cir. 1987). Thus,

---

[3]    The record does not reflect why Plaintiffs failed to include records from all 3288 stores in this report.

4

summary judgment will be appropriate only as to those issues for which, on the record as a whole, no rational trier of fact could find for the non-moving party. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). This court was concerned that a group of employees who are non-exempt under any circumstances (because they do not meet the supervision requirement) might be required to await any recovery until after the lengthy trial on much more complicated issues. The court therefore invited the parties to file motions for partial summary judgment on this issue.

## I.     The "Executive" Exemption

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, provides that an employer must compensate an employee for any hours worked over 40 in a week at a rate of one and one-half times the employee's regularly hourly wage. The overtime requirement is subject to a number of exemptions, however, including an exemption for persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Such exemptions are construed narrowly against the employer seeking to assert them. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The employer bears the burden of demonstrating an employee's exempt status. *Id.* at 394.

At the time of the court's earlier opinion, federal regulations established two tests for determining whether an employee qualifies for the exemption, commonly referred to as the "long test" and the "short test." 29 C.F.R. §§ 541.1(f), 541.119 (July 1, 2004). Because the Y Store managers earn more than $250 per week, the parties agreed that the "short test" applies. Under the short test, an employee is exempt if: (1) his or her primary duties are management of the enterprise or a subdivision thereof; and (2) the employee regularly and customarily directs the work of two or more other employees within that enterprise or subdivision thereof. 29 C.F.R. § 541.1(f) (July 1,

5

2004). The Department of Labor has since amended the regulations and significantly altered the "short test." Under the current regulations,

> An employee with total annual compensation of at least $100,000 [of which, at least $455 must be paid on a salary or fee basis] is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified [in the regulations].

29 C.F.R. § 541.601(a); § 541.601(b). Employees earning less than $100,000 annually are only deemed exempt if they satisfy all four aspects of the executive exemption test. Under the four-part test, the executive exemption applies to any employee: (1) who receives weekly compensation of at least $455; (2) whose "primary duty" is management of the enterprise or a recognized subdivision thereof; (3) who "customarily and regularly directs the work of two or more other employees;" and (4) who has the authority to hire and fire persons or whose recommendations and suggestions as to hiring, firing, and promotion "are given particular weight." 29 C.F.R. § 541.100. Neither party has commented on these changes, and because this action concerns a time period prior to these regulatory amendments, they do not alter the analysis of the issue.

In its previous memorandum order and opinion, the court discussed the first prong of the short test: whether the primary duties of Y store managers include management of sales associates. *See Perez v. RadioShack Corp.*, No. 02 C 7884, 2003 WL 21372467 (N.D. Ill. June 13, 2003.) Specifically, the court offered its opinion that "Plaintiffs face an uphill battle in arguing that management was not their primary duty." *Id.* at *7. The court did not, however, analyze the second element of the short test: whether the class members were engaged in the "customary and regular supervision or direction" of "two full-time employees or the equivalent." The parties' cross-motions motion focus on this latter requirement. The Plaintiff class urges that they are entitled to partial

6

summary judgment as to those class members who did not customarily and regularly direct two or more employees, and Defendant, in turn, argues that the requirement has been met with respect to all class members.

## A.    Subordinate Supervision

The requirement that exempt employees customarily and regularly supervise two or more full-time employees has two components, both of which are disputed. First, exempt employees must be responsible for supervising "two or more other employees or the equivalent." The parties dispute the number of subordinate hours of supervision necessary to satisfy this requirement. Plaintiffs urge that the Regulations establish 80 hours of subordinate work per week (the hourly equivalent of two 40-hour per week employees) as a bright-line rule. Defendant, on the other hand, contends that, in this case, the supervision of 64 hours of subordinate work per week is sufficient to meet the requirement, in light of RadioShack's own recognition of a 32-hour workweek as full-time. Second, this supervision must be "customary and regular." Plaintiffs argue that an employee must meet the above 80-hour standard at least 87 percent of the time in order for such supervision to be considered "customary and regular." Defendant argues in favor of a 60 percent requirement. For the sake of clarity, the court will discuss these two components in turn.

### 1.    Two Full-Time Employees or the Equivalent

The Department of Labor has issued regulations clarifying the "two or more employees" supervision requirement:

> To qualify as an exempt executive under § 541.100, the employee must customarily and regularly direct the work of two or more other employees. The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

7

29 C.F.R. § 541.104(a).[4] In its Field Operations Handbooks, the Department of Labor's Wage-Hour Division has established a bright-line rule: any number of part-time employees will be the equivalent of two full-time employees working 40-hour weeks, so long as the total number of hours supervised exceeds 80. *See Herman v. Harmelech*, No. 93 C 3458, 2000 WL 420839, *7 (N.D. Ill. Apr. 14, 2000) ("Sensibly, the Department of Labor has interpreted the 'equivalent' to two full-time employees as any combination of part-time employees collectively working at least 80 hours per week."); *Secretary of Labor v. Daylight Dairy Prods., Inc.*, 779 F.2d 784, 787 (1st Cir. 1985) (characterizing the 80 total hours of supervision as a "bright-line rule"), *disapproved on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Marshall v. Hudson Stations, Inc.*, Nos. 77-2172, 2173, 1979 WL 1917, at *3 (D. Kan. Jun. 8, 1979) (to fall within the executive exemption an employee "must customarily and regularly supervise two or more employees whose combined hours per week total 80 or more"); *but cf. Murray v. Stuckeys, Inc.*, 50 F.3d 564, 568-69 (8th Cir. 1995) ("[A]lthough forty hours per week is generally the equivalent of a full-time employee, the Department of Labor in applying this regulation recognizes that this is not a rigid standard.").

---

[4] As noted, the relevant federal regulations have been amended during the pendency of this case. Prior to these amendments, the regulatory provision regarding the supervision of two or more employees read as follows:

> An employee will qualify as an "executive" under § 541.1 only if he customarily and regularly supervises at least two or more full-time employees or the equivalent. For example, if the "executive" supervises at least one full-time and two part-time employees of whom one works mornings and one, afternoons; or four part-time employees, two of whom work mornings and two afternoons, this requirement would be met.

29 C.F.R. § 541.105(a) (July 1, 2004). Although the new regulations replace the word "supervises" with "directs," the court believes this and the other minor alterations are not substantive changes.

The Department of Labor recognizes an exception for industries with a standard full-time work week of slightly less than 40 hours, such as banking and insurance. *Daylight Dairy Prods.*, 779 F.2d at 787 n.2. The Preamble to the newly enacted regulations explains:

> The Department does not believe additional clarification is necessary, and stands by its current interpretation that an exempt supervisor generally must direct a total of 80 employee-hours of work each week. As the Wage and Hour Division's Field Operations Handbook (FOH) states, however, circumstances might justify lower standards. For example, firms in some industries have standard workweeks of 37 ½ hours or 35 hours for their full-time employees. In such cases, supervision of employees working a total of 70 or 75 hours in a workweek will constitute the equivalent of two full-time employees.

69 Fed. Reg. 22135 (Apr. 23, 2004). The court believes this exception does not apply here. RadioShack retail stores have standard operating hours well in excess of 40 per week. (Pls.' 56.1(a), ¶ 11.) Nor has Defendant presented any evidence that a less-than-40-hour workweek is standard for full-time employees in the retail industry as a whole. Defendant does cite a Bureau of Labor Statistics website showing that non-supervisory personnel in the retail industry work an average of approximately 31 hours per week, but the data does not distinguish between part-time and full-time workers, nor does it purport to represent or define the standard, or even average, full-time workweek in the retail industry. (Ex. 6 to Def.'s Brief.)[5]

Defendant nevertheless argues that this 80-hour standard is not a bright-line rule and should not be applied here. In light of the fact that the FLSA does not define full-time employment, Defendant instead posits a number of alternative possible standards for the "two or more employees" requirement. Arguing that the question of whether an employee qualifies as a full-time or part-time

---

[5] The court has been unable to access the website containing the Bureau of Labor Statistics data. According to Defendant, the data is available at http://data.bls.gov/PDQ/servlet/SurveyOutputServlet?&series_id=CEU4200000005.

employee "is a matter generally to be determined by the employer," Defendant urges that the number of hours equivalent to two or more full-time employees should be determined based on the employer's own definition of full-time employee. (Defendant's Memorandum in Support of Motion for Partial Summary Judgment, hereinafter "Def.'s Brief," at 5.) Since July 1, 2003, Radio Shack's policies have defined employees who regularly work 32 or more hours per week as full-time employees, entitled to health care benefits. (Def.'s 56.1(a), ¶ 33.) Thus, Defendant argues, the two-or-more-employees-supervision requirement is met in this case when a manager supervises 64 or more hours of subordinate time each week.

Defendant constructs its argument as follows: First, although the FLSA does not define full-time employment, the Department of Labor's Bureau of Labor Statistics has defined a standard workweek as encompassing 35 to 44 hours. (Def.'s 56.1(a), ¶ 29, citing http://www.dol.gov/dol/topic/workhours/full-time.htm.) RadioShack urges that this 35-hour figure should be accepted as the definition of a full-time workweek. In addition, Defendant urges that hourly work totals should include all *scheduled* hours, not just *paid* hours. Where an employee is scheduled to work an 8 hour day, including the one-hour unpaid lunch break, Defendant argues that the employee should be considered to have worked a 40-hour week for purposes of the FLSA. Consideration of only paid hours is necessarily underinclusive, Defendant maintains, in light of state laws mandating that an employee working a full eight-hour day be given a lunch break. *See* 820 ILCS 140/3 (requiring 20 minute meal period). More to the point, Defendant urges that an employee scheduled to work a 35-hour week would, if given a 30 minute unpaid lunch break, only be paid for 32 ½ hours. From this, Defendant contends that its own definition of full-time employment as consisting of a 32-hour work week should be accepted for purposes of the FLSA and the requirement of supervision of two or more

10

employees.

The court is not persuaded by Defendant's reasoning, for which no case law or regulatory language is cited. Defendant's assertion that "[n]o bright-line standard or mathematical formula exists" for determining whether an employee customarily and regularly supervises two or more employees is simply inconsistent with the regulations. (Defendant's Memorandum in Support of Motion for Partial Summary Judgment, hereinafter "Def.'s Brief," at 2.) Those regulations, and the case law interpreting them, indicate that an employee must supervise 80 hours of subordinate work per week in order to qualify for the executive exemption, except in limited circumstances where the industry as a whole has a standard workweek of slightly less than 40 hours. As noted above, a number of courts have expressly imposed such a bright-line standard. *See, e.g.*, *Herman*, 2000 WL 420839, at *7 ("Sensibly, the Department of Labor has interpreted the 'equivalent' of two full-time employees as any combination of part-time employees collectively working at least 80 hours per week."). Defendant cites to a Department of Labor website declaring that the FLSA does not define full-time employment and that "[t]his is a matter generally to be determined by the employer." As Plaintiffs point out, however, the sentence following the one quoted by RadioShack declares that "[w]hether an employee is considered full-time or part-time does not change the application of the FLSA."[6] (Pls.'s Res. to Def.'s 56.1(a), ¶ 28.) The court is unwilling to adopt Defendant's implicit suggestion that an employer can manipulate its employees' entitlement to FLSA protection through the simple expedient of adjusting its own definition of "full-time" employee. Nor is the court persuaded by Defendant's contention that it is fair to consider non-working *scheduled* hours such as

---

[6]     The website is available at http://www.dol.gov/dol/topic/workhours/full-time.htm.

11

lunch breaks in the calculation of hours supervised. The court presumes that employees are not supervised during their lunch breaks and that RadioShack sales associates are free to leave the store premises during such breaks.[7]

In the absence of case law or regulatory support, Defendant has submitted affidavits from two former employees of the Department of Labor: Tammy McCutchen, who served as an advisor to Secretary of Labor Elaine L. Chao from September 2001 through June 2004; and Alfred H. Perry, who spent forty-one years as an employee with the Department of Labor's Wage and Hour Division. These affidavits detail the witnesses' understanding of the meaning of the FLSA and corresponding regulations, as well as the enforcement practice of the Department of Labor's Wage and Hour Division in regards to the executive exemption. Specifically, the former employees expressed their opinion that Defendant's interpretation of the executive exemption is valid, in light of their experience with the Department of Labor. Ms. McCutchen, for example, stated that, in her experience, the Department of Labor does not apply the 80-hour rule "as an inflexible, mathematical formula," but rather "considers all of the facts and circumstances regarding both the supervisor in question and the employer, including the employer's rules for determining and defining 'full-time' status." (Aff. of Tammy McCutchen, Ex. 28 to Def.'s Brief, at 6.) Ms. McCutchen also stated that she believed the Field Operations Handbook's statement that an exempt employee "generally must

---

[7]     Defendant's argument regarding the inclusion of lunch breaks might have been more compelling if there were evidence that large numbers of its employees were regularly scheduled to work 40 hours per week with a 30 minute unpaid lunch break. The court is uncomfortable adopting a "scheduled hours" approach where employees are scheduled to work less than 40 hours a week *before* deducting unpaid lunch breaks. In the court's opinion, such an approach invites manipulation by employers in the form of long (unpaid) lunch breaks and/or the practice of routinely sending workers scheduled to work a full eight-hour day home early.

direct a total of 80 employee-hours of work each week" to be "a statement of general guidance." (*Id.*) She opined, further, that the Handbook's exception for industries with a standard workweek of slightly less than 40 hours is "just one example" of an unusual circumstance supporting a deviation from this 80-hour standard. (*Id.*)

Mr. Perry asserted that, in his experience at the Department of Labor, he is not aware of any personnel employing a mathematical formula to determine whether an employee customarily and regularly supervises the two or more full-time employees. (Aff. of Fred Perry, Ex. 30 to Def.'s Brief, at 5.) Instead, he stated that agency officials look to "the totality of the person's employment," disregarding temporary periods of reduced workforce due to vacation or sick time, or employee termination. (*Id.* at 6.) Both Ms. McCutchen and Mr. Perry offered their opinions that a person scheduled to work a 35-hour week, with only 32 of those hours being paid after deductions of meal and break times, would qualify as full-time under the regulations.

In response, Plaintiffs have submitted their own affidavits from two former Department of Labor Employees. Judith Kramer worked for the Department of Labor for 25 years, including 15 years as Deputy Solicitor for Planning and Coordination. Ms. Kramer asserts that she is unaware of any case law or Department of Labor interpretation that supports "the proposition that as few as 64 hours per week may constitute the equivalent of two full-time employees." (Kramer Report, Exhibit 2 to Pl.'s Motion to Strike, at 4.)

J. Dean Speer, a thirty-five year employee of the Department of Labor who served as the Director of Policy and Analysis for the Wage and Hour Division from 1990 to 1995. In Mr. Speer's opinion, the regulations do impose a bright-line 80-hour standard: "As a matter of practice, I can unequivocally state that the Wage and Hour Division does not permit and never has permitted an

employer to define full-time employment for the purposes of claiming the executive exemption." (Aff. of J. Dean Speer, Ex. 2 to Pl.'s Brief, at 3.) According to Mr. Speer, the Department of Labor accepts the 80-hour supervision level as a "bright line test." (Id.) Regarding the "unusual circumstances" exception, Mr. Speer stated that the exception has been applied only for those industries, such as banking and insurance, which have "historically had a shorter standard workweek." (Id.) Factors such as vacation time, sick time, leaves of absence, and employee turnover "were not viewed in any context as 'unusual circumstances' by the enforcement personnel of the Wage and Hour Division of the Department of Labor." (Id.) Finally, Mr. Speer stated that, "[e]xcept in the banking and insurance industry, I am not aware of any enforcement policy or investigation . . . where an employer was granted the executive exemption where its managers did not supervise 80 hours or more at least 90% of the time." (Id. at 4.)

In light of the failure of these witnesses to reach a consensus on the issue, the court respectfully concludes the affidavits are entitled to little weight here. Moreover, the Department itself has already spoken on these issues through its issuance of regulations implementing the FLSA. The "agency's interpretation of its own [ambiguous] regulation is entitled to deference," Christensen v. Harris County, 529 U.S. 576, 588 (2000), citing Auer v. Robbins, 519 U.S. 452, 461 (1997), but the opinions of former government employees "are not authoritative to the extent they interpret and apply federal regulations relevant to the governmental groups for which they were formerly employed." United States v. Carroll, 320 F. Supp. 2d 748, 755 (S.D. Ill. 2004) (refusing to consider affidavits of former employees of U.S. Department of Health and Human Services regarding interpretation of federal regulations). This is true even if the employee himself or herself drafted some of the relevant regulations. Id. While at least one of Defendant's witnesses claims to have

14

written a portion of the relevant regulations, her "subsequent interpretations should be given no more deference than that given to a congressman's or lobbyist's subsequent explanations of a statute . . ." *Id., citing Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1438 (7th Cir. 1998). "Subsequent writings may be nothing but wishful thinking, and unless they are uttered as part of the process of enacting a later law (and therefore show assumptions on which Congress as a whole acted at least once) they are of no account." *Covalt*, 860 F.2d at 1438, *citing Quern v. Mandley*, 436 U.S. 725, 736 n.10 (1978). With this in mind, the court defers to the regulations and case law, all of which suggest that the FLSA imposes a bright-line 80 hours per week subordinate supervision requirement in order for the executive exemption to apply.

### 2. Customarily and Regularly

The second component of the subordinate-supervision requirement is that the supervision be "customary and regular." 29 C.F.R. § 541.100(a)(3). Under the regulations, "[t]he phrase 'customarily and regularly' signifies a frequency which must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. A number of courts have further elaborated on this definition, considering the standard in terms of the amount of time actually spent supervising employees. In *Daylight Dairy Products*, which involved a claim for unpaid overtime wages for retail store managers, the court found that none of the managers met the 80-hour subordinate supervision requirement more than 76 percent of the time. 779 F.2d at 787-88. The First Circuit held that this level of supervision "falls short of 'regular and customary' supervision of 80 hours of work." *Id.* at 788. The Seventh Circuit has subsequently approved of this reasoning in dicta in an unpublished opinion:

> We agree with the reasoning in [*Daylight Dairy Products*], that, where the supervised

15

employees work "full time" only 67% of the-time over the relevant time period, such amount of supervision falls short of the "regular and customary" supervision of two full-time employees that is required under Section 241.1(f).

*Jackson v. Go-Tane Services, Inc.*, No. 02-1468, 56 Fed. Appx. 267, 272 n.8 (7th Cir. 2003) (holding car wash manager not exempt because "primary duty" not management). The Eighth Circuit, on the other hand, has expressed disagreement (in dicta) with the First Circuit's assertion that 76 percent of the time falls short of regular and customary, while holding supervision of at least two or more employees working a total of 80 hours per week 98.2 percent of the time to be customary and regular "by any definition." *Murray*, 50 F.3d at 568 (holding convenience store managers exempt from FLSA's overtime requirement).

If 76 percent of the time is not enough supervision to qualify for the exemption, but 98 percent clearly is, Plaintiffs argue that the court should effectively split the difference, and hold that the Y store managers must supervise 80 or more hours of subordinate time at least 87 percent of the time in order to qualify for the executive exemption. In contrast, Defendant argues that employees who supervise two or more full-time employees 60 percent or more of the time do so customarily and regularly. Defendant argues that this lower standard is necessary to allow flexibility in, for example, the case of vacations, employee turnover, or seasonal reduction in workforce.

In light of the case law, the court believes that an 80 percent standard is appropriate. This standard comports with the regulatory direction that "customary and regular" signifies a frequency greater than occasional but less than constant. Moreover, this standard recognizes that many retail employers, including, presumably, RadioShack, have high turnover rates among low level employees. An 80 percent standard should not render a management employee's exempt status vulnerable to employee turnover, or other employment variables. At the same time, the court must balance this

need for employer flexibility against the Supreme Court's mandate that "FLSA exemptions are to be 'narrowly construed against . . . employers' and are to be withheld except as to persons 'plainly and unmistakably within their terms and spirit.'" *Auer v. Robbins*, 519 U.S. 452, 462 (1997), *quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). An 80 percent standard is high enough to ensure that exempt employees are actually regularly engaged in the supervision of such employees. The court sees no reason why the vagaries discussed above would occur more than 20 percent of the time; if they do, an employer will be hard pressed to argue that the management employee customarily and regular supervises two or more full-time subordinates.

## II.    Propriety of Partial Summary Judgment

Regardless of the manner in which the subordinate supervision requirement is interpreted, Defendant argues that the issue must be determined on a class-wide basis encompassing all opt-in class members. Plaintiff, on the other hand, proposes that the court grant partial summary judgment in favor of those Plaintiffs who have not supervised 80 or more hours of subordinate time per week during at least 80 percent of their tenure; in effect, "carving out" those Plaintiffs from the rest of the class who will proceed to trial.

Defendant maintains that the adjudication of individual claims in the context of a class action, whether pursuant to Rule 23 or § 216(b), is not appropriate. Instead, Defendant requests that the court examine the entire class of Y store managers, to determine whether the position as a whole qualifies under the executive exemption. Any other approach would require individualized inquiry into the facts and circumstances surrounding particular managers and workweeks, a process "inconsistent with litigating this case as a class action." (Def.'s Brief, at 8.) Such an individualized inquiry would be required, according to Defendant, because the FLSA regulations provide that

"unusual circumstances might justify lower standards" of subordinate supervision. 69 Fed. Reg. 22135.

Defendant cites a number of individual plaintiffs whose failure to meet the 80-hours per week subordinate supervision requirement may be explained by "unusual circumstances" – high levels of employee turnover at particular locations or seasonal downturns in sales revenue. Indeed, Defendant urges that "the type of 'unusual circumstances' that explain why some RadioShack 'Y' Store managers may have supervised fewer than the required subordinate hours – whether Plaintiff's proposed 80 hours or RadioShack's actual full-time standard, 64 hours – will span an incredibly wide range of 'facts and circumstances' in view of the nationwide scope of this litigation." (Def.'s Brief, at 9.) This assertion, however, is belied by the fact that, to date, the courts have only recognized two types of "unusual circumstances." As discussed above, the regulations recognize what could be called a "banker's hours" exception, allowing industries that traditionally have a standard workweek slightly less than 40 hours to calculate the equivalent of two full-time employees by reference to this slightly shorter period, i.e. 70 or 75 versus 80 hours. *Daylight Dairy Prods.*, 779 F.2d at 787 n.2; 69 Fed. Reg. 22135. The Eighth Circuit recognized a second type of unusual circumstance in *Murray*, where it excused an employee's workforce reduction occasioned during the off-season. *Murray*, 50 F.3d at 569. Defendant contends that *Murray* establishes that a seasonal decrease in sales revenue generally will constitute an "unusual circumstance" excusing a reduction in subordinate supervision below the 80-hour standard. In the court's view, *Murray* does not sweep so broadly: the workforce downsizing in that case came when the company "fell on hard times . . . in the years just prior to its failure." *Id.* Such company-specific downturns differ, in this court's opinion, from general retail slow seasons. There is nothing unusual about seasonal lulls in the retail industry; indeed, it is well recognized that

18

many retail sellers earn the majority of their revenues during the traditional holiday shopping season.[8] This court does not read the Eighth Circuit's opinion as encompassing these more general seasonal business lulls; to the extent it does, this court respectfully disagrees with its analysis.

Defendant offers no other authority for its argument that the court should recognize "unusual circumstances" that would excuse an exempt employee's failure to meet the subordinate supervision requirement. Nor has Defendant cited any authority suggesting that this narrow exception creates a need for an intensive, individual inquiry into the circumstances surrounding each plaintiff's employment. The case law discusses the 80-hour subordinate supervision requirement as a "bright-line" rule; Defendant's expansive reading of the "unusual circumstances" exception would render the requirement anything but.

Indeed, Defendant's suggestion that the "unusual circumstances" exception renders FLSA suits unsuitable for class action adjudication, insofar as it requires inquiry into the circumstances surrounding each individual plaintiff's employment, is at odds with the statute's inclusion of its own class action provision, entirely separate from Rule 23. Under § 216(b), an employee may bring an action under the FLSA on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). Thereafter, similarly situated employees have the right to "opt-in" to the class. *Id.* Not only does the statute thus endorse class adjudication of FLSA claims, but the statute's similarly-situated requirement has been interpreted as "considerably less stringent" than that applied to class actions certified under Rule 23. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *citing Flavel v. Svedala Indus. Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994); *LaChapelle v. Owens-Illinois,*

---

[8]     Likewise, employee turnover can hardly be said to be unusual in the retail sales industry.

*Inc.*, 513 F.2d 286, 289 (5th Cir. 1975). Defendant's broad reading of the "unusual circumstances" language would render this class action process untenable.

*Daylight Dairy Products*, cited by Defendant, does not hold otherwise. There, the Eighth Circuit held that retail store managers were not exempt when no supervisor within the class supervised 80 or more subordinate hours per week more than 76 percent of the time. (Def.'s Reply Brief, at 6.) Defendant argues that the case "provides no support for the proposition that individual managers be culled from a class to measure their individual exempt status with a 76% ruler . . ." (Def.'s Reply Brief, at 6.) Yet that is exactly what occurred in *Daylight Dairy*. There, the Secretary of Labor brought suit against a dairy products company alleging a failure to pay overtime. In the suit, "[t]he Secretary concede[d] that most of the managers met the executive employee exception to the overtime pay requirement . . ., but contend[ed] that managers who supervised less than 80 hours of work per week . . . were covered by the Act." *Daylight Diary Products*, 779 F.2d at 786. Thus, the fact that the court found that no employees had met the 80 hour requirement more than 76% of the time does not indicate, as Defendant argues, that the court considered the plaintiffs as a class, but rather that no individual plaintiff met the requirement.

The court is not willing to accept the notion that so long as an employee falls under a job category generally classified as exempt, the employee's individual circumstances must be ignored. Even where the majority of employees in a category qualify for the executive exemption, the court would be reluctant to deny the protection afforded by Congress to employees who do not qualify as exempt merely because they were erroneously classified with other employees who do qualify. At a minimum, such a result would be troublesome where, as in this case, a substantial number of employees within the job category do not meet the exemption requirements. In this case, it appears

20

that a number of Y store managers have been misclassified even under the test RadioShack proposes.[9]

The court's proposed 80 hour/80% rule sets a reasonably high standard defining who is a member of this exempt job classification. Those employees who do not meet the subordinate supervision requirement will be carved out of this class, and be entitled to summary judgment immediately. The remaining employees will proceed to trial on the remaining requirement for application of the executive exemption: whether their primary duty consisted of management of the business enterprise.

## III.    Statute of Limitations

Finally, Plaintiffs argue that Defendant's failure to pay overtime to those Y store managers who did not customarily and regularly supervise 80-hours per week of subordinate work was reckless, and that the applicable statute of limitations is thus three years. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988), *citing* 29 U.S.C. § 255 (wilful violations of FLSA subject to three-year statute of limitations as opposed to two-year limitations period for non-wilful violations). Plaintiffs urge, further, that they are entitled to summary judgment on the issue because there is no genuine issue of material fact regarding Defendant's recklessness. This argument bears little discussion. In light of the history of this case, it is apparent that there exist substantial disputes over the issues

---

[9]    The court notes that the notice and invitation to join sent to prospective class members informs potential members that they may be entitled to bring suit if they worked in excess of forty hours per week during the relevant time period. The notice does not, however, advise potential members that they may be entitled to immediate judgment in their favor if they did not regularly supervise at least 80-hours of subordinate time per week. Thus, the court believes it would be unfair to penalize those class members who are indeed entitled to immediate judgment on this basis because they chose to opt-in to the class action.

presented here. Plaintiffs' request for summary judgment on this issue is denied.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for partial summary judgment (Doc. No. 267-1) is granted in part and denied in part. Defendant's partial motion for summary judgment (Doc. No. 288-1) is denied. Plaintiff's motion to strike the affidavit of Alfred Perry (Doc. No. 304) is denied as moot. The parties are directed to make a joint proposal within 45 days for according relief to those individuals affected by today's opinion. Should counsel prove unable to reach an accord, the court will entertain the possibility of appointing a special master to review Defendant's time records and identify affected class members.

ENTER:

Dated: November 1, 2005

REBECCA R. PALLMEYER
United States District Judge

22