# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALPHONSE L. PEREZ and DOUGLAS G. PHILLIPS, individually, and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | No. 02 C 7884 |
| ) | |
| RADIOSHACK CORPORATION, ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alphonse L. Perez and Douglas G. Phillips filed suit against Defendant RadioShack Corporation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq.*, seeking to recover overtime pay on behalf of an "opt-in" class of persons who routinely worked more than 40 hours per week as "Y store" managers. RadioShack insists that Y store managers are exempt from such overtime pay because they are "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). Under the "short test" applicable in this case, an individual qualifies as an exempt executive if (1) his or her primary duties are management of the enterprise or a subdivision thereof; and (2) the employee regularly and customarily directs the work of two or more other employees within that enterprise or subdivision thereof. 29 C.F.R. § 541.1(f) (July 1, 2004).[1]

---

[1] For purposes of this action, the parties agree that the FLSA "short test" applies because Y store managers earn more than $250 per week. 29 C.F.R. §§ 541.1(f), 541.119 (July 1, 2004). The Department of Labor has since amended the regulations and significantly altered the "short test" to provide that employees earning less than $100,000 annually are deemed exempt only if they satisfy the following four-part test:

> (1) the employee receives weekly compensation of at least $455; (2) the employee's "primary duty" is management of the enterprise or a recognized subdivision thereof; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee has the authority to hire and fire persons or his or her recommendations and suggestions as to hiring, firing, and promotion "are

On June 13, 2003, the court allowed Plaintiffs to proceed with notice to persons who had the option of affirmatively choosing to participate in, and be bound by the outcome of this lawsuit. *Perez v. RadioShack Corp.*, No. 02 C 7884, 2003 WL 21372467 (N.D. Ill. June 13, 2003). In that opinion, however, the court did express doubts about Plaintiffs' ability to satisfy the first prong of the short test, noting that they "face an uphill battle in arguing that management was not their primary duty." *Id.* at *7. As discovery evolved, it became clear that at least some class members did not supervise two or more full-time workers as required under the second prong of the short test. Thus, on September 9, 2005, the court announced its determination to grant immediate relief to all Y store managers who do not meet the second prong of the test for exemption, which the court defined as those who did not supervise 80 or more hours of subordinate time at least 80% of the time. *Perez v. RadioShack Corp.*, 386 F. Supp. 2d 979 (N.D. Ill. 2005), *reconsideration denied*, (Order of 11/2/05, Doc. No. 360).

The parties now dispute the proper method of calculating the overtime wages due to this subset of Plaintiffs (the "Subclass Plaintiffs"). RadioShack urges the court to apply the "fluctuating workweek" method of calculating overtime and award the Subclass Plaintiffs one-half their regular rate of pay for each hour worked over 40 in a week. *See* 29 C.F.R. § 778.114. The Subclass Plaintiffs argue that their overtime should be calculated at a rate of one-half their regular rate of pay for all overtime hours worked up to 54, which represents the number of hours their salary is intended to compensate each week. After that, the Subclass Plaintiffs claim, they should be paid at a rate of one and one-half times their regular rate for all hours worked beyond 54 per week. For

---

given particular weight."

29 C.F.R. § 541.100. *See also* 29 C.F.R. §§ 541.601(a), 541.601(b). To the extent this action concerns a time period prior to these regulatory amendments, they do not alter the court's analysis here. The court notes, however, that the new regulation contains provisions very similar to the ones disputed here, and that it appears that all of the employees in question earn more than $455 per week.

the reasons set forth here, the court finds that the proper method of calculating overtime compensation must be determined on an individual employee basis.

## DISCUSSION[2]

Under the FLSA, non-exempt employees are generally entitled to overtime pay at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1). For employees paid by the hour, this calculation is relatively simple. Plaintiffs here, however, are paid on a salary basis, and also receive commissions and bonuses. Where an employee is paid on a salary basis, the regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113. The employee then receives one and one-half times that regular rate of pay for all hours worked in excess of 40 per week.

An exception applies where employees have hours of work that fluctuate but receive a fixed salary for all straight-time hours worked. 29 C.F.R. § 778.114. In such cases, the regular hourly rate is determined by dividing the fixed weekly salary by the number of hours the employee actually works in a particular week. The employee then receives one-half his or her regular rate of pay for all hours worked over 40 per week. *Id.*; *Condo v. Sysco Corp.*, 1 F.3d 599, 605 (7th Cir. 1993) ("The fixed salary compensates the employee for *all* his hours, *the overtime ones included*. He therefore receives 100% of his regular rate for each hour that he worked. As such, he is entitled only to an additional fifty percent of his regular rate for the hours that he worked in excess of forty.") (emphasis in original).

For employees who receive commissions or bonuses, the regulations provide as follows:

> To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period

---

[2] The facts of this matter are set forth in detail in the court's September 9, 2005 Memorandum Opinion and Order. *Perez*, 386 F. Supp. 2d at 981-83. This opinion assumes the reader's familiarity with that earlier decision.

> during which it was earned. The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard. The additional compensation for that workweek must be not less than one-half of the increase in the hourly rate attributable to the commission for that week multiplied by the number of hours worked in excess of the applicable maximum hours standard in that workweek.

29 C.F.R. § 778.119.

The Subclass Plaintiffs insist that the fluctuating workweek method cannot apply here because RadioShack has not satisfied the necessary prerequisites. Specifically, the Subclass Plaintiffs claim that they were not always compensated at the minimum wage rate, they did not have a clear mutual understanding regarding their payment, and they did not receive any extra compensation at the time they worked overtime hours. Even if the fluctuating workweek method does apply, the Subclass Plaintiffs argue, the court should adopt the alternative overtime calculation set forth in *Cowan v. Treetop Enterprises*, 163 F. Supp. 2d 930 (M.D. Tenn. 2001).

I.  **Fluctuating Workweek**

As described above, the Subclass Plaintiffs believe they are entitled to recovery of one and one-half times their hourly pay for all hours worked in excess of 40 per week. RadioShack argues that the Subclass Plaintiffs' unpaid overtime compensation should be calculated pursuant to the fluctuating workweek method set forth in 29 C.F.R. § 778.114. As explained in the regulation, employers may utilize this method only if the employer can show: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary that remains the same regardless of the number of hours worked per week; (3) the fixed salary is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employee receives at least 50 percent of his regular hourly pay for all overtime hours worked; and (5) the employer and the employee have a clear mutual understanding that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek. *Id. See also Condo*, 1 F.3d at 601-02. The Subclass Plaintiffs contend the third and fifth requirements are not

4

met here. The Subclass Plaintiffs argue, further, that the regulations also impose a sixth requirement: that the employee receive, contemporaneously with his or her work hours, "extra compensation, in addition to [his or her] salary, for all overtime hours worked at a rate not less than one-half his [or her] regular rate of pay." 29 C.F.R. § 778.114.

## A. Compensation at Minimum Wage

The Subclass Plaintiffs argue, first, that RadioShack is not entitled to the "fluctuating workweek" determination because the salaries class members received from RadioShack did not compensate them at a level equal to or above the applicable minimum wage rate – $5.15 per hour – in their longest workweeks. 29 C.F.R. § 778.114(a); 29 U.S.C. § 206(a)(1).[3] The Subclass Plaintiffs claim, for example, that from 1999 through 2001, the base salary for Y store managers was $21,000 per year, and that class members routinely worked in excess of 80 hours per week. (Pl. Mem., at 4.)[4] An annual salary of $21,000 divided by 52 weeks equals a weekly salary of $403.85. Any Y store managers who worked 79 or more hours in a given week thus received less than the applicable minimum wage in that week (at 79 hours per week, an employee earning a $21,000 annual salary is compensated at $5.11 per hour). The Subclass Plaintiffs direct the court to an exhibit showing that a combined list of class members worked in excess of 80 hours per week a total of 2,642 times between 2000 and 2004. (Ex. 2 to Pl. Mem.) The exhibit does not indicate, however, whether all Y store managers were in fact earning $21,000 per year.

RadioShack counters that Y store managers working in stores with annual sales of $1 million actually earn $24,000 per year. In addition, employees receive additional "tenure pay"

---

[3] The minimum wage has since increased to $5.25 per hour, but the parties agree that the minimum wage during the relevant time period was $5.15.

[4] Plaintiffs' Brief Re Calculation of the Overtime Rate for Class Members Receiving Summary Judgment is cited as "Pl. Mem., at ___."

5

ranging from $1,000 to $8,000 per year. (Def. Supp., at 3.)[5] Class members in certain markets also receive an increase in salary to account for higher costs of living, ranging from $1,700 to $7,500 per year. Finally, all Y store managers are eligible for bonuses and commission payments. (*Id.*) The Subclass Plaintiffs deny that bonuses and commissions are included in calculating fixed salary, and argue that even assuming a base salary of $28,000 per year, "there are still at least 49 instances where the salary fell below the minimum wage." (Pl. Reply, at 2, 4; Ex. 2 to Pl. Mem.)[6]

The Department of Labor has issued an opinion letter stating that a fluctuating workweek may apply as long as an employee's base salary actually provides an employee with an average hourly rate not less than the applicable minimum wage, or "is reasonably calculated to" do so. 27 Op. Wage and Hour Admin. 945 (1969) ("Opinion Letter 945"); *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 894 (E.D. Tex. 1997). This last phrase means that the employee will not become eligible for overtime pay merely because there are "infrequent occasions when unforeseen events cause the employee to work so many hours that her salary fails to support an average hourly rate at least equal to the minimum wage." *Cash*, 2 F. Supp. 2d at 894. If the breaches become too common, however, the employer must cease using the fluctuating workweek method and reach a new understanding with the employee. *Id.* at 895. *See also* 51 Op. Wage and Hour Admin. 1010 (1969) ("Opinion Letter 1010") (requiring an employer to renegotiate the overtime calculation where the base salary failed to provide the minimum wage in 27 weeks).

Relying on Opinion Letters 945 and 1010, in an unpublished opinion the Eleventh Circuit concluded that an employer was permitted to use the fluctuating workweek method despite

---

[5] Defendant RadioShack Corporation's Supplemental Brief in Support of Using a Half-Time Rate to Calculate the Overtime Premium for any Non-Exempt Salaried Class Members is cited as "Def. Supp., at ___."

[6] Plaintiffs' Brief in Reply to RadioShack's "Supplemental Brief in Support of Using a Half-Time Rate to Calculate the Overtime Premium for Any Non-Exempt Salaried Class Members" is cited as "Pl. Reply, at ___."

6

evidence that the base salary failed to provide the minimum wage in five weeks in one year, where that variance was not foreseeable to the employer. See Davis v. Friendly Exp., Inc., No. 02-14111, 2003 WL 21488682, at *2 (11th Cir. Feb. 6, 2003) (rejecting plaintiffs' assertion that "no fluctuating workweek calculation is available if even one time the base salary fails to achieve the minimum wage.") See also Aiken v. County of Hampton, 172 F.3d 43 (Table) (4th Cir. 1998) (rejecting plaintiff's assertion that "once a minimum wage adjustment is made, the employer and employee must reach a new understanding as to hours and compensation," where the plaintiff "d[id] not argue that falling below minimum wage was 'foreseeable' except that it happened five times (to four different officers) in a two-year period, and therefore it might happen again.")

In this case, the Subclass Plaintiffs make much of the fact that class members worked more than 80 hours per week some 2,642 times between 2000 and 2004. The problem with the Subclass Plaintiffs' supporting exhibit is that it does not consider the number of times each individual employee worked more than 80 hours per week. Significantly, it appears that there may be considerable variance among class members on that matter. Steven J. Ayers, for example, worked more than 80 hours on only one occasion (120 hours the week ending December 14, 2001), whereas Wolfgang Pflaum worked more than 80 hours on approximately 50 occasions, and Humberto Gonzalez worked more than 80 hours on some 14 occasions. (Ex. 2 to Pl. Mem.) In addition, the Subclass Plaintiffs fail to confirm each manager's actual compensation at the time he or she worked more than 80 hours in a week. Compare Inniss v. Tandy Corp., 141 Wash. 2d 517, 533-34, 7 P.3d 807, 816 (2000) (upholding RadioShack's "V" store manager pay plan under Washington state law where "the actual weekly compensation for each Petitioner was never less than the total weekly compensation based upon the minimum hourly wage.")

Nor is it clear that all affected class members' names appear on the chart; there may be class members who never worked more than 80 hours in a week and, thus, always received a salary within the minimum wage rate. Finally, the parties have not yet agreed on the total number

7

of Y store managers included in this subset of Plaintiffs. (*See* Joint Status Report, at 5 (Doc. No. 368) (stating Plaintiffs' belief that 871 managers are entitled to immediate judgment, compared with RadioShack's position that a final count "must await further information and direction from the court.").) "Concluding from the [exhibit] that regular minimum wage violations occurred without these pieces of information constitutes nothing more than sheer speculation." *Cash*, 2 F. Supp. 2d at 907 (finding plaintiffs' list of employees purportedly due overtime because of minimum wage violations "unhelpful because plaintiffs neither identify the persons on the list whose average hourly rate fell under the applicable minimum wage and number of times each of those individuals suffered that fate, disclose the total number of violations that the list covers, nor relate how many coefficient employee salaries were paid during the period the list encompasses.")

Contrary to the Subclass Plaintiffs' suggestion, this is not a case where RadioShack's general salary structure is such that it "knew managers would be required to work in excess of 80 hours." (Pl. Reply, at 5.) RadioShack documents all indicate that Y store managers are expected to work 5 or 6 days per week for a total of 54 hours, far below the number at which the Subclass Plaintiffs' salaries no longer provide a minimum wage. (*See* Exs. 6-19 to Pl. Mem.) The court is unable to conclude that RadioShack should have foreseen as a matter of course that Y store managers would routinely work more than 80 hours per week. Indeed, by the Subclass Plaintiffs' own estimation, Y store managers earning $28,000 per year received below the minimum wage on only 49 occasions in four years. (Pl. Reply, at 4; Ex. 2 to Pl. Mem.) Thus, a determination whether RadioShack paid its Y store managers a fixed salary sufficient to compensate them at the applicable minimum wage for purposes of the fluctuating workweek method of calculating overtime pay must be made on an individual employee basis.

Before leaving this issue, the court notes that the parties disagree as to whether monies received for commissions and bonuses must be included in calculating an employee's "regular rate" of pay. RadioShack claims that they must, noting that 29 C.F.R. § 778.200 defines "regular rate"

to include "all remuneration for employment paid to, or on behalf of, the employee." (Def. Supp., at 3.) The regulation identifies several exceptions, only one of which has any arguable relevance here: "[s]ums paid in recognition of services performed during a given period [are not counted] if . . . (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 C.F.R. § 778.200. To the extent Y store managers are eligible for sales-based bonuses each month as a matter of course, this exception is not applicable. (*See* Y Store Manager Pay Plan, 2002-2004, Ex. 10 to Def. Mem.)

The Subclass Plaintiffs nonetheless urge that only salary may be considered for purposes of the fluctuating workweek test. They cite *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884 (E.D. Tex. 1997), (Pl. Reply, at 1), but in that case the court held merely that for purposes of 29 C.F.R. § 778.114, the "salary basis" test is met where "a fixed sum [is] paid at regular intervals of time that serves as the foundation of employee non-overtime pay." *Id.* at 905. *See also Parks v. Locating, Inc.*, No. C99-1488Z, 2000 WL 33964347, at *1 (W.D. Wash. July 24, 2000), *rev'd on other grounds*, 37 Fed. Appx. 901 (9th Cir. 2002) ("[I]n *Cash*, the court concluded that [the] salary basis test was met under the fluctuating workweek method so long as a sum certain was paid at regular intervals and from which no deductions were made in instances where the employee['s] scheduled work hours fell below 40 per week.") There is no dispute here that the Subclass Plaintiffs' compensation satisfies this salary basis test. So long as commissions and bonuses are paid each month as a matter of course, those amounts must be included in determining the Subclass Plaintiffs' regular rates of pay.

## B. Clear Mutual Understanding

The Subclass Plaintiffs also object to the use of the fluctuating workweek method on the grounds that the parties lacked a "clear mutual understanding" of such an arrangement. Relying on *Rainey v. American Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82 (D.D.C. 1998), the Subclass Plaintiffs argue that "when an employer misclassifies an employee as exempt from the overtime provisions of the FLSA," there can be no clear mutual understanding of payment pursuant to a fluctuating workweek. In *Rainey*, the defendant employer wrongly classified an employee as exempt under the FLSA. 26 F. Supp. 2d at 86. The employer argued that the court should apply the fluctuating workweek method of calculating the employee's overtime compensation because it paid her a flat amount each week. *Id.* at 99-100. In rejecting the argument, the court held, in part, that the parties could not have had a clear mutual understanding regarding the fluctuating workweek given that the employer classified the employee as exempt. "If the parties had originally agreed that plaintiff's compensation would be governed by the fluctuating workweek method, then defendant would have had to have conceded from the start that plaintiff was covered by" the overtime provisions of the FLSA. *Id.* at 102. Having failed to do so, the employer was not entitled to rely upon the fluctuating workweek method in calculating the plaintiff's overtime pay. *Id.*

RadioShack urges the court to rely instead on several cases holding that a clear mutual understanding may be based on an implied-in-fact agreement. In *Mayhew v. Wells*, 125 F.3d 216 (4th Cir. 1997), for example, the Fourth Circuit held that a clear mutual understanding may be "based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." *Id.* at 219. The employee in *Mayhew* worked as a non-exempt drug abuse education and correctional officer. He owned a dog that was used on occasion as the sheriff department's tracking dog, and sued to recover overtime pay for his time spent caring for the dog. *Id.* at 217.

The sheriff's department argued that the court should adopt a fluctuating workweek method of calculating the overtime because the officer was employed on a fixed salary for fluctuating hours. *Id.* at 219. The Fourth Circuit agreed and noted that the parties also had the requisite clear mutual understanding that the officer would be paid a fixed salary. *Id.* The officer testified that he understood he would never be paid more than his fixed salary regardless of the number of hours he worked, and that his pay would never be docked if he worked less than the expected number of hours. *Id.*

In *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988), the employer misclassified as exempt two meat market managers who filed suit to recover overtime pay. In calculating the amount of compensation owed, the court utilized the fluctuating workweek method based on evidence that the employees understood that "they would be paid a fixed weekly salary, and would work whatever number of hours were required to get the job done." *Id.* at 1137, 1138. In *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35 (1st Cir. 1999), similarly, the First Circuit held that the plaintiff agreed to a fluctuating workweek where she understood that she would receive a fixed salary for working "from 8:30 to whenever." 173 F.3d at 39. In reaching this conclusion, the court rejected the employee's argument that "[b]ecause the parties initially agreed that [the employee] would not receive any additional payments for overtime hours, no agreement regarding calculation of overtime existed." *Id.* In the court's view, "the regulation calls for no such enlarged understanding." *Id. See also Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 286 (N.D. Ill. 1995) (employee impliedly consented to payment at a fixed sum per week regardless of the hours worked where for almost two and a half years the parties conducted themselves as if the employee was properly classified as exempt under the FLSA, and the employee never protested that "[h]is hours per week varied considerably [but] his paycheck was always the same."); *Braddock v. Madison County*, 34 F. Supp. 2d 1098, 1105 (S.D. Ind. 1998) (finding clear mutual understanding where

11

"[t]he plaintiffs all continued to work for years" and received fixed amount of pay regardless of the number of hours worked).

The court finds the reasoning of Mayhew, Blackmon, Valerio, and Zoltek persuasive. Like the employees in those cases, the Subclass Plaintiffs all received a fixed salary regardless of the number of hours they worked each week, and they understood that their hours would vary from week to week. It appears, further, that at least some class members accepted this arrangement without protest. Plaintiffs Perez and Douglas never asked RadioShack about overtime pay. (Perez Dep., Ex. 2 to Def. Mem., at 31 ("Q: Have you ever asked anyone at RadioShack to receive overtime? A: No. Q: Have you ever complained to anyone at RadioShack about not receiving overtime? A: No."); Douglas Dep., Ex. 5 to Def. Mem., at 79 ("Q: Did you at any point in time make any complaints to anyone in RadioShack's chain of management . . . about the fact that your position was classified as exempt from overtime? A: No, I didn't.").) There is no evidence in that regard, however, as to any of the other Y store managers, nor any indication whether Y store managers who supervised fewer subordinates reacted differently. See Zoltek, 884 F. Supp. at 286 (noting that there is no implied agreement "if the employee contemporaneously protests" to a compensation plan). Absent further evidence on this issue, the court cannot determine whether class members had a "clear mutual understanding" that they were being compensated on a fixed salary.

### C. Extra Compensation

The Subclass Plaintiffs next argue that the fluctuating workweek method of calculating overtime pay is inappropriate here because RadioShack failed to provide contemporaneous payment of overtime compensation. (Pl. Mem., at 6.) See Rainey, 26 F. Supp. 2d at 100 ("[C]ontemporary payment of overtime compensation is a necessary prerequisite for application of the fluctuating workweek method.") According to the Rainey court, § 778.114 "contains no

suggestion that such compensation need only be paid as part of a judicially crafted remedy, but rather establishes that it is a necessary precondition to application of the fluctuating workweek method." *Id.* at 101. See also *Cowan v. Treetop Enterprises*, 163 F. Supp. 2d 930, 942 (M.D. Tenn. 2001) (agreeing with *Rainey* that an employer's "prior assertion of exempt status for [its] employees and the lack of contemporaneous payment of the 50% overtime . . . bar the [employer's] reliance upon Section 778.114(a).")

Other courts, however, have not required contemporaneous payment of overtime as a prerequisite to applying the fluctuating workweek method. In *Valerio*, for example, the employee was classified as exempt and understood that her salary was to compensate her for fluctuating hours. 173 F.3d at 37, 39-40. The district court concluded that the employee was not exempt under the FLSA and awarded her overtime pay using the fluctuating workweek method. The employee appealed, arguing in part that she was entitled to payment at a rate of one and one-half times her regular rate of pay for all overtime hours. The First Circuit held that the district court properly applied the fluctuating workweek method because the parties reached a clear mutual understanding that "while the employee's hours may vary, . . . her base salary will not." *Id.* at 40. In *Blackmon*, similarly, the Fifth Circuit utilized the fluctuating workweek method of calculating overtime pay for two employees who had been misclassified as exempt from overtime pay. 835 F.3d at 1137, 1138. The court explained that the employees understood that "they would be paid a fixed weekly salary, and would work whatever number of hours were required to get the job done." *Id.* at 1138.

More recently in *Tumulty v. FedEx Ground Package Sys., Inc.*, No. C04-1425P, 2005 WL 1979104 (W.D. Wash. Aug. 16, 2005), a Washington district court applied the fluctuating workweek method where a package delivery service, FedEx Ground, failed to pay drivers overtime in the mistaken belief that they were independent contractors. *Id.* at *5. The court held that FedEx Ground was the drivers' joint employer and, based on "the undisputed evidence that Plaintiffs

13

clearly understood that they would be paid a fixed weekly salary regardless of the number of hours they worked[, concluded] that the fluctuating workweek is an appropriate method of calculating any overtime compensation due." *Id.* In reaching this conclusion, the *Tumulty* court expressly rejected the reasoning of *Rainey*, without elaboration. *Id.*

Once again, the court finds the reasoning of *Valerio* and *Blackmon* persuasive. Nothing in the language of § 778.114 mandates that the fluctuating workweek method of calculations is precluded where the overtime payments are awarded retroactively as a remedy. As long as the employee has agreed, without contemporaneous objection, to receive a fixed salary for fluctuating hours of work, the fluctuating workweek method of calculating overtime applies. Thus, RadioShack's failure to make contemporaneous overtime payments to the Subclass Plaintiffs does not act as a bar to use of the fluctuating workweek method.

## II. Alternative Overtime Calculation

In the event RadioShack is not entitled to apply a fluctuating workweek method of calculating overtime pay for certain employees, the Subclass Plaintiffs urge the court to adopt the standard set forth in *Cowan v. Treetop Enterprises*. Specifically, *Cowan* noted that under § 778.113, an employee's regular rate of pay is determined by dividing the weekly salary by "the number of hours the salary is intended to compensate, not necessarily the number of hours the employee actually works." 163 F. Supp. 2d at 938. The court found that the plaintiffs' salary covered 53 hours of work per week, and awarded them one-half times their regular rate of pay for all hours worked between 40 and 53, plus one and one-half times their regular rate of pay for all hours worked over 53. *Id.* at 939.

In support of this position, the Subclass Plaintiffs cite numerous RadioShack documents stating that Y store managers were expected to work at least 54 hours per week. (Exs. 7-16 to Pl. Mem.) The Subclass Plaintiffs also submitted a second expert report from J. Dean Speer, a former

14

employee of the Wage and Hour Division of the U.S. Department of Labor ("WHD"). (Speer Expert Report of 10/12/05, Ex. A to Def. Strike Reply.)[7] Mr. Speer explained that in determining the parties' understanding as to the number of hours an employee's salary is intended to compensate, the WHD (1) interviews the employee, other employees "similarly employed," the employee's supervisor, human relations managers, and senior management; and (2) reviews written materials such as employee manuals, job descriptions, personnel manuals, and training manuals. (*Id.* at 5.) RadioShack objects to the *Cowan* method of calculation but merely reiterates its theory that the fluctuating workweek method should apply instead. RadioShack also seeks to strike Mr. Speer's October 12, 2005 Expert Report on the grounds that it is untimely and invades the province of the court and the jury.[8] (Def. Strike Reply, at 3, 7-9.)

In the court's view, the *Cowan* method presents a reasonable basis for calculating overtime pay in those instances where the fluctuating workweek method does not apply but an employee earns a fixed salary designed to cover more than 40 hours of work per week. If some class members ultimately do not qualify for a fluctuating workweek method of calculating overtime, the court will utilize the *Cowan* method as stated in this opinion.

## III.  Commissions and Bonuses

The parties do not dispute the proper method for calculating additional overtime compensation for employees who receive bonuses and commissions. Accordingly, such calculations must be made pursuant to § 778.119:

> To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned. The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard. The additional compensation for that

---

[7]  The Reply Memorandum in Support of Defendant RadioShack's Motion to Strike the Testimony and Report(s) of Plaintiffs' Expert J. Dean Speer is cited as "Def. Strike Reply, at ___."

[8]  The court addresses the motion to strike in a separate opinion.

15

workweek must be not less than one-half of the increase in the hourly rate attributable to the commission for that week multiplied by the number of hours worked in excess of the applicable maximum hours standard in that workweek.

29 C.F.R. § 778.119.

## CONCLUSION

The court finds that the proper method of calculating overtime pay must be made on an individual basis as stated in this opinion. To the extent any class members do not qualify for the fluctuating workweek method, the court will employ the method set forth in *Cowan v. Treetop Enterprises*.

ENTER:

Dated: December 14, 2005

REBECCA R. PALLMEYER
United States District Judge