

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALPHONSE L. PEREZ and DOUGLAS G. PHILLIPS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RADIOSHACK CORPORATION,<br><br>Defendant. | No. 02 C 7884<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alphonse L. Perez and Douglas G. Phillips filed suit against Defendant RadioShack Corporation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq.*, seeking to recover overtime pay on behalf of an "opt-in" class of persons who routinely worked more than 40 hours per week as "Y store" managers. RadioShack insists that Y store managers are exempt from such overtime pay because they are "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). Under the "short test" applicable in this case, an individual qualifies as an exempt executive if (1) his or her primary duties are management of the enterprise or a subdivision thereof; and (2) the employee regularly and customarily directs the work of two or more other employees within that enterprise or subdivision thereof. 29 C.F.R. § 541.1(f) (July 1, 2004).[1]

---

[1] For purposes of this action, the parties agree that the FLSA "short test" applies because Y store managers earn more than $250 per week. 29 C.F.R. §§ 541.1(f), 541.119 (July 1, 2004). The Department of Labor has since amended the regulations and significantly altered the "short test" to provide that employees earning less than $100,000 annually are deemed exempt only if they satisfy the following four-part test:

> (1) the employee receives weekly compensation of at least $455; (2) the employee's "primary duty" is management of the enterprise or a recognized subdivision thereof; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee has the authority to hire and fire persons or his or her recommendations and suggestions as to hiring, firing, and promotion "are

On August 30, 2005, Plaintiffs submitted an expert report from J. Dean Speer, a former employee of the Wage and Hour Division ("WHD") of the U.S. Department of Labor ("DOL"), stating his opinion that a Y store manager's primary duty is something other than management (the "August Report"). (Speer Expert Report of 8/30/05, Ex. 1 to Def. Strike Mem.)[2] On October 12, 2005, Plaintiffs submitted a second expert report from Mr. Speer in which he describes "the process or methodology used by the ["WHD"] in determining overtime compensation due to non-exempt employees under section 13(a)(1) of the [FLSA]" (the "October Report"). (Speer Expert Report of 10/12/05, Ex. A to Def. Strike Reply, at 1.)[3] RadioShack seeks to strike both reports and all related testimony as invading the province of the court and the jury. RadioShack also argues that the October 12, 2005 report is untimely. For the reasons set forth here, the motion is granted in part and denied in part.

## DISCUSSION[4]

Expert testimony is admissible if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Miksis v.*

---

given particular weight."
29 C.F.R. § 541.100. *See also* 29 C.F.R. §§ 541.601(a), 541.601(b). To the extent this action concerns a time period prior to these regulatory amendments, they do not alter the court's analysis here. The court notes, however, that the new regulation contains provisions very similar to the ones disputed here, and that it appears that all of the employees in question earn more than $455 per week.

[2] The Memorandum of Points and Authorities in Support of Defendant RadioShack's Motion to Strike the Testimony and Expert Report of Plaintiffs' Expert J. Dean Speer is cited as "Def. Strike Mem., at __."

[3] The Reply Memorandum in Support of Defendant RadioShack's Motion to Strike the Testimony and Report(s) of Plaintiffs' Expert J. Dean Speer is cited as "Def. Strike Reply, at __."

[4] The facts of this matter are set forth in detail in the court's June 13, 2003 and November 1, 2005 Memorandum Opinions and Orders. *Perez v. RadioShack Corp.*, No. 02 C 7884, 2003 WL 21372467 (N.D. Ill. June 13, 2003); *Perez v. RadioShack Corp.*, 386 F. Supp. 2d 979, 981-83 (N.D. Ill. 2005), *reconsideration denied*, (Order of 11/2/05, Doc. No. 360). This opinion assumes the reader's familiarity with the earlier decisions.

*Howard*, 106 F.3d 754, 763 (7th Cir. 1997) (quoting FED. R. EVID. 702). It is well-established, however, that "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (citing *United States v. Sinclair*, 74 F.3d 753, 758 n.1 (7th Cir. 1996)) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury.")

RadioShack argues that both of Mr. Speer's expert reports incorporate legal conclusions that usurp the role of the court and the jury. In the August Report, Mr. Speer concludes:

> In applying the four tests contained in both the prior and current [FLSA] regulations and the guidance provided by the [WHD's] Field Operations Handbook [i.e., importance of work, exercise of discretionary powers, relative freedom from supervision, and relationship between wages and salary], not only do the store managers spend less than 50% of their time in management, but when the additional tests are applied to their activity, it is clear management is not their primary duty.

(August Report, at 10.) In the October Report, Mr. Speer explains the methodology used by the WHD to calculate overtime pay owed to non-exempt employees paid on a salary basis. (October Report.) RadioShack objects to the August Report because "the Court will instruct the jury on the 'primary duty' element of the executive exemption, and it will be the jury's responsibility to determine what constituted Plaintiffs' primary duty." (Def. Strike Mem., at 3.) RadioShack contends that the October Report is untimely, and insists that "[n]either the Court nor the jury will require Mr. Speer's assistance [in calculating overtime] in light of the clear, straight-forward rules that are prescribed in the applicable DOL regulations and that will be explained to the jury by the Court in the instructions." (Def. Strike Reply, at 7.) The court addresses each report in turn.

## A. August Report

RadioShack argues that Mr. Speer should not be permitted to offer an opinion regarding a central jury question in this case; i.e., whether Y store managers had "management" as their "primary duty." RadioShack directs the court to *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736 (N.D. Ill. 2003), in which the court excluded an expert report that "expound[ed] on what complies or does not comply with the FDCPA [Fair Debt Collection Practices Act]." *Id.* at 740. The court explained:

> We emphasize that it is the fact finder's responsibility to examine each of the FDCPA's factors[5] to determine the amount of damages on statutory liability. . . . It is inappropriate . . . for [the expert] to make legal conclusions regarding any of the four factors or to opine on the seriousness of the violations or the amount of damages. This responsibility lies solely with the fact finder.

*Id.* The court did, however, allow the expert to offer testimony regarding collection agency standards and practices and the extent to which the noncompliance was intentional. *Id.* at 740-41.

In the August Report, Mr. Speer analyzes the four factors relevant in determining whether an employee's primary duty is management where he spends less than 50% of his time on management: (1) the relative importance of managerial duties as compared with other types of duties; (2) the frequency with which the employee exercises discretionary powers; (3) the relative freedom from supervision; and (4) the relationship between the employee's salary and wages paid other employees for the same kind of work performed by the supervisor. 29 C.F.R. § 541.103 (July 2004).[6] (*See also* August Report, at 7-10; Field Operations Manual § 22c02(a).) Mr. Speer concludes that each factor weighs in favor of finding that management is not a Y store manager's

---

[5] The factors include: (1) the frequency and persistence of noncompliance by the debt collector; (2) the nature of such noncompliance; (3) the resources of the debt collector; (4) the number of persons adversely affected; and (5) the extent to which the debt collector's noncompliance was intentional. 15 U.S.C. § 1692k.

[6] The definition of "primary duty" under the amended regulations is found at 29 C.F.R. § 541.700.

4

primary duty. (*Id.* at 7-10.) RadioShack argues that this constitutes a legal conclusion that will determine the outcome of the case.[7] (Def. Strike Mem., at 3.)

Plaintiffs disagree, noting that Mr. Speer nowhere states that RadioShack violated the FLSA, or that Y store managers are entitled to overtime pay. (Pl. Strike Resp., at 4-5.)[8] In Plaintiffs' view, Mr. Speer "simply analyzed the facts of this case through his specialized knowledge and training as the facts apply to the issues of this case." (*Id.* at 5.) Plaintiffs acknowledge, however, that "[t]he key issue before the court is whether management is the primary duty of individuals employed by Radio Shack as 'Y' Store Managers." (*Id.* at 8.) Significantly, if management is not the "primary duty," Y store managers cannot be exempt executives and must receive overtime pay. The mere fact that Mr. Speer does not expressly state as much does not preclude a finding that he has opined on that legal issue.

The court finds that much of Mr. Speer's August Report consists of improper legal conclusions that will determine the outcome of the case. *See Good Shepherd Manor Found.*, 323

---

[7] RadioShack also makes much of the fact that in a previous case involving Y store managers in Pennsylvania, the attorneys representing Plaintiffs in this case argued to exclude opinions from RadioShack's experts stating that the employees' primary duty was management:

> An expert is simply not allowed to offer opinions as to the legal consequences of the facts of the case when such opinions are not helpful. *See Loeb v. Hammond*, 407 F.2d 77[9], 781 (7th Cir. 1969). Where a jury is presented with all the facts needed to render a proper verdict, expert opinion on the ultimate issues of "primary duty" and "supervision of two or more employees" is simply not helpful. *See generally Paul Morelli Design, Inc. v. Tiffany and Co.*, 200 F. Supp. 2d 482, 487 (E.D. Pa. 2002).

(Def. Strike Mem., at 4 (quoting Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Disqualify RadioShack's Proposed Expert Tammy D. McCutchen, Ex. 5 to Def. Strike Mem.).) To the extent parties are free to make conflicting arguments in different cases involving different plaintiffs, the court does not find this argument persuasive. Indeed, RadioShack does not suggest that the plaintiffs in the Pennsylvania action succeeded in barring testimony from RadioShack's expert, or that judicial estoppel applies here.

[8] Plaintiffs' Opposition to Defendant RadioShack's Motion to Strike the Testimony and Report of Plaintiffs' Expert J. Dean Speer is cited as "Pl. Strike Resp., at __."

F.3d at 564. Mr. Speer may offer testimony regarding the DOL's standards and practices in assessing whether an employee is an exempt executive for purposes of receiving overtime pay. See, e.g., Perez, 386 F. Supp. 2d at 987 (citing affidavits from former DOL employees detailing "the witnesses' understanding of the meaning of the FLSA and corresponding regulations, as well as the enforcement practice of the Department of Labor's Wage and Hour Division in regards to the executive exemption.") He may not, however, testify as to his conclusion that Y store managers do not have management as their primary duty.

### B. October Report

With respect to Mr. Speer's October Report, RadioShack first moves to strike it as untimely. Expert reports must be disclosed "at the times and in the sequence directed by the court." FED. R. CIV. P. 26(a)(2)(C). Pursuant to the court's schedule, Plaintiffs' expert reports were due by August 30, 2005, rebuttal reports were due by September 30, 2005, and expert discovery closed on October 31, 2005. (Order of 8/15//05, Doc. No. 322.) Plaintiffs characterize the October 12, 2005 Report as a rebuttal report but, according to RadioShack, it neither rebuts the opinions of any RadioShack experts, nor makes any reference to those opinions. (Def. Strike Reply, at 3 n.3.) Regardless, an untimely expert report need not be excluded where the delay in disclosure was justified or harmless. FED. R. CIV. P. 37(c)(1); Dura Automotive Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 615 (7th Cir. 2002). The court has broad discretion in making such a determination. Baldwin Graphic Sys., Inc. v. Siebert, Inc., No. 03 C 7713, 2005 WL 1300763, at *1 (N.D. Ill. Feb. 22, 2005); David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003).

RadioShack received the October 12, 2005 Report before the close of expert discovery, and the parties have not yet filed their pretrial orders or motions in limine. RadioShack does not argue that it has been prejudiced by Plaintiffs' delay in producing the October Report, and the court will grant additional time for RadioShack to prepare a responsive report, if necessary. On these facts,

the court is satisfied that the delay in disclosing the October Report was harmless. *See, e.g., Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1094-95 (N.D. Ill. 2001) (admitting untimely expert report and testimony where there was no unfair surprise about the identity of the expert, who had already been deposed, and ample time remained to prepare an examination). *Cf. Trustmark Ins. Co. v. General Cologne Life Reinsurance of Am.*, No. 00 C 1926, 2003 WL 21673934, at *1 (N.D. Ill. July 16, 2003) (defendant's delay in disclosing expert rebuttal report was not harmless where the plaintiff had time to depose the expert but the final pretrial order and motions in limine had been filed almost two weeks before the disclosure).

RadioShack also argues that as with the August Report, the October Report invades the province of the court and the jury by offering legal conclusions regarding the DOL's methodology for determining overtime compensation due to non-exempt employees. (Def. Strike Reply, at 7.) Section 1 of the October Report addresses the "Methodology Followed by DOL to Calculate Overtime Owed." (October Report, at 3.) Section 2 addresses "How DOL Investigates and Determines the Employer-Employee Understandings on the Number of Hours for which the Salary is Intended to Compensate." (*Id.* at 5.) RadioShack asserts that Section 1 merely summarizes the rules set forth in 29 C.F.R. §§ 778.113 and 778.114, and that "[n]either the Court nor the jury will be assisted by Mr. Speer's testimony in this regard because his testimony only will parrot the Court's jury instructions." (Def. Strike Reply, at 8.) RadioShack also objects that Section 2 merely instructs jurors to "review and consider all of the testimonial and documentary evidence available to them that is relevant to" determining the understanding between an employer and employee regarding the number of hours the employee's salary is intended to compensate. (*Id.*)

In the court's view, the lawyers themselves may find guidance in section 2 of the October Report regarding "How DOL Investigates and Determines the Employer-Employee Understandings on the Number of Hours for which the Salary is Intended to Compensate." The court presumes that counsel will present evidence similar to what the DOL considers in reaching its determination. The

7

jury, however, will not be assisted by the information set out in section 2. On the other hand, Mr. Speer may testify regarding the DOL's standards and practices in calculating overtime pay, which is all he has commented upon in section 1 of the report. While RadioShack is correct that the described methodology is largely set forth in the DOL regulations, Mr. Speer has worked as a WHD employee for some 35 years, including 16 years as a District Director, and his testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 712 (7th Cir. 2005) (quoting FED. R. EVID. 702). (*See also* October Report, at 1.) That said, the court expects that before determining the damages, if any, to which Plaintiffs are entitled, the jury will first be asked to determine whether RadioShack has met its burden of showing that Plaintiffs have management as their primary duty. Only if this issue is resolved in Plaintiffs' favor will the jurors have occasion to hear evidence relating to damages. Thus, Mr. Speer's testimony will only be relevant if a jury first determines that management was not the "primary duty" of Y store managers.

## CONCLUSION

For the reasons stated above, RadioShack's motion to strike the August 30, 2005 and October 12, 2005 expert reports from J. Dean Speer and any related testimony (Docket No. 324) is granted in part and denied in part.

ENTER:

Dated: December 13, 2005

REBECCA R. PALLMEYER
United States District Judge

8