UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALPHONSE L. PEREZ and DOUGLAS G. PHILLIPS, individually, and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 02 C 7884 |
| RADIOSHACK CORPORATION, ) ) | Judge Rebecca R. Pallmeyer Magistrate Judge Nan R. Nolan |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alphonse L. Perez and Douglas G. Phillips filed suit against Defendant RadioShack Corporation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 et seq., seeking to recover overtime pay on behalf of an "opt-in" class of persons who routinely worked more than 40 hours per week as "Y" store managers. RadioShack insists that Y store managers are exempt from such overtime pay because they are "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). Under the "short test" applicable in this case, an individual qualifies as an exempt executive if (1) his or her primary duties are management of the enterprise or a subdivision thereof; and (2) the employee regularly and customarily directs the work of two or more other employees within that enterprise or subdivision thereof. 29 C.F.R. § 541.1(f) (July 1, 2004).[1]

---

[1] The parties agree that the FLSA "short test" applies in this case because Y store managers earn more than $250 per week. 29 C.F.R. §§ 541.1(f), 541.119 (July 1, 2004). The Department of Labor has since amended the regulations and significantly altered the "short test" to provide that employees earning less than $100,000 annually are deemed exempt only if they satisfy the following four-part test:

> (1) the employee receives weekly compensation of at least $455; (2) the employee's "primary duty" is management of the enterprise or a recognized subdivision thereof; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee has the authority to hire and fire persons or his or her recommendations and suggestions as to hiring, firing, and promotion "are

At some point during the discovery process, it became clear to district court Judge Rebecca R. Pallmeyer that at least some class members did not supervise two or more full-time workers as required under the second prong of the short test. Thus, on September 9, 2005, Judge Pallmeyer announced her determination to grant immediate relief to all "Y" store managers who do not meet the second prong of the test for exemption, which the district court has defined as those who did not supervise 80 or more hours of subordinate time at least 80% of the time (the "80/80 Rule"). *Perez v. RadioShack Corp.*, 386 F. Supp. 2d 979 (N.D. Ill. 2005), *reconsideration denied*, (Order of 11/2/05, Doc. No. 360).

RadioShack sought clarification of several issues relating to the 80/80 Rule, including (1) whether the rule applies on a store-by-store basis when an employee worked at more than one store during the relevant time period; (2) whether paid benefit hours (e.g., paid vacations, sick time, and personal time) are included as time supervised; (3) whether subordinate time supervised by individual class members during partial – or "stub" – weeks is included in the analysis; (4) the proper method of calculating an employee's "regular rate of compensation" – i.e., the fluctuating workweek method or an alternative method; and (5) whether the issues of willfulness and Plaintiffs' entitlement to liquidated damages are reserved for trial. At a hearing on October 4, 2005, Judge Pallmeyer clarified that the issues of willfulness and liquidated damages are in fact reserved for trial, and she asked the parties to submit briefs regarding the proper method of calculating overtime pay.[2] (Tr. of 10/4/05, at 17-19, 22.) Judge Pallmeyer also stated that she is "inclined to go with a store-by-store analysis" where an employee spends "a few months" – i.e., three or four months

---

given particular weight."

29 C.F.R. § 541.100. *See also* 29 C.F.R. §§ 541.601(a), 541.601(b).

[2]   On December 14, 2005, Judge Pallmeyer held that the fluctuating workweek method is generally proper for calculating overtime pay, but that each class member must be assessed on an individual basis. *Perez v. RadioShack*, No. 02 C 7884, 2005 WL 3750320 (N.D. Ill. Dec. 14, 2005).

2

– at one store, and then a few months at another store. (Tr. at 34-35, 37.) As for the remaining questions, the court instructed the parties to meet and confer in light of the observations raised at the hearing.

On November 3, 2005, Judge Pallmeyer referred this matter to the magistrate judge for "further determinations concerning" which class members fall within the subclass of Plaintiffs entitled to summary judgment (the "Subclass Plaintiffs"), and recommendations as to whether a special master should be appointed. (Executive Committee Order of 11/3/05, Doc. No. 364.) The parties have identified four primary issues that remain to be resolved: (1) whether the 80/80 Rule applies on a store-by-store basis; (2) if so, whether time supervised is based on a class member's entire tenure at a store, even if that tenure predates the claim period; (3) whether paid benefit hours are included as time supervised; and (4) the proper method of calculating subordinate time supervised by individual class members during partial – or "stub" – weeks. The court first discusses the parties' positions on these issues. The court then considers the possible outcomes under each scenario, and states its findings.

## DISCUSSION

I. **The Remaining Disputes**

A. **Store-By-Store Basis**

On occasion, RadioShack transfers employees from one store to another for periods of time as needed. Judge Pallmeyer stated that in determining whether such employees have supervised at least 80 hours of subordinate time at least 80% of the time, it is appropriate to consider individually each store at which an employee worked for at least three or four months. (Tr. of 10/4/05, at 34-35, 37.) The parties now dispute the number of weeks encompassed by that "three or four month" period. RadioShack argues that three to four months equates to 13 to 17 weeks (91 to 119 days), and urges the court to adopt the midpoint of these figures, 15 weeks (105 days).

Plaintiffs claim that three to four months equates to 12 to 16 weeks (84 to 112 days), and seek a midpoint figure of 14 weeks (98 days).

## B. Pre-Claim Period Analysis

In a related issue, the parties have thus far analyzed individual class member supervision rates solely based on the two-year claim period. Some "Y" store managers, however, started working in a particular store before their two-year claim period began and remained in that store for some time thereafter. For example, suppose that a class member supervised one "Y" store for 50 consecutive weeks, but that only the last 25 weeks fall within the statutory limitations period. RadioShack argues that, to be consistent with the store-by-store analysis discussed above, all 50 weeks should be included in determining time supervised at that store.

Truncating the store-by-store analysis as of the effective date of a class member's damages claim, RadioShack contends, creates "an anomaly inherent in the subordinate supervision analysis that relates to any future finding of a willful violation." (Jt. Status Report, at 5-6, Doc. 403.) The anomaly arises because the damages period for a general FLSA violation is two years, but the damages period for a willful violation is three years. According to RadioShack,

> [a]dding this additional year to the claim period actually increases the supervision rates of some class members such that they are no longer entitled to summary judgment under the standard established in the September 9 Order because over a three year period, they supervise 80 hours per week 80% of the time, whereas in the two-year period they did not. The converse is also true: truncating the store-by-store analysis of class members as of the effective date of their damages claim results in some class members not falling under the court's 80/80 Rule, whereas inclusion of their pre-claim period time in the store to which they were assigned at the start of their damages claim period results in a supervision rate falling below the court's 80% standard.

(*Id.* at 6-7.) By RadioShack's calculation, if the court utilizes a truncated analysis and a third year is subsequently added to the two-year claim period, 26 class members will lose their status as members of the subclass and 19 class members will newly become subclass members. (Letter from J. McNeill of 3/21/06, at 5-6.) Similarly, if Plaintiffs establish willfulness and the court utilizes

4

a truncated analysis for a three-year claim period, 89 class members will lose their status as members of the subclass. At the same time, if the court considers pre-claim period time worked at a particular store under a three-year claim period analysis, 149 class members will lose their status as members of the subclass. (Id. at 6.)

Plaintiffs insist that the liability period should mirror the recovery period and that, in the example above, only the last 25 of 50 weeks should be included in determining time supervised at the store. Plaintiffs object that RadioShack's proposal requires the court to look beyond the claim period for purposes of determining liability, but continues to limit recoverable damages to those sustained during the claim period. In Plaintiffs' view, "[t]he defendant's approach, which conveniently excludes any liability for damages for the time outside the class period, is manifestly unfair, inconsistent with the purpose of the statute of limitations and needlessly complicates the analysis." (Letter from D. Touhy of 3/21/06, at 4.)

### C. Paid Benefit Hours

The parties next dispute whether paid benefit hours, such as paid vacations, sick time, and personal time, are included as time supervised. For example, suppose a "Y" store manager supervises two employees who work from 8:30 a.m. to 5:00 p.m., with a half-hour lunch, totaling 80 supervised hours per week. If one of the subordinates takes off for a day or two on paid vacation or paid sick leave, and the store does not bring in a temporary replacement, has the manager still supervised 80 subordinate hours that week? At the October 4, 2005 hearing, Judge Pallmeyer stated, "my view would be if your staff ordinarily includes four people and somebody is out sick, your staff still is deemed to include four people." (Tr. of 10/4/05, at 43.) At the same time, if a subordinate employee is off for "weeks and weeks," then a "Y" store manager cannot be deemed to have "supervised" that employee's time. (Tr. at 45.)

The parties now disagree as to how many weeks a subordinate employee must be absent before his or her paid benefit hours no longer count as time supervised. RadioShack argues that an employee must be absent on paid leave for six consecutive weeks or more. Plaintiffs urge that paid benefit time never counts as time supervised. In support of this position, Plaintiffs cite the following language from Judge Pallmeyer's September 9, 2005 Order:

> Nor is the court persuaded by Defendant's contention that it is fair to consider non-working *scheduled* hours such as lunch breaks in the calculation of hours supervised. The court presumes that employees are not supervised during their lunch breaks and that RadioShack sales associates are free to leave the store premises during such breaks.

(Order, at 11-12.) (*See also* Letter from D. Touhy of 3/21/06, at 2.) Plaintiffs, however, neglect to address the footnote that appears at the end of this passage:

> Defendant's argument regarding the inclusion of lunch breaks might have been more compelling if there were evidence that large numbers of its employees were regularly scheduled to work 40 hours per week with a 30 minute unpaid lunch break. The court is uncomfortable adopting a "scheduled hours" approach where employees are scheduled to work less than 40 hours a week *before* deducting unpaid lunch breaks. In the court's opinion, such an approach invites manipulation by employers in the form of long (unpaid) lunch breaks and/or the practice of routinely sending workers scheduled to work a full eight-hour day home early.

(Order, at 12 n.7.) Judge Pallmeyer expressed concern with the concept of "scheduled hours" due to the potential that employers could manipulate unpaid employee time. Paid employee time off, at issue here, does not invite the same kind of employer manipulation. Consistent with this understanding, Judge Pallmeyer observed at the October 4, 2005 hearing that, "my view would be if your staff ordinarily includes four people and somebody is out sick, your staff still is deemed to include four people." (Tr. at 43.) Thus, the court rejects Plaintiffs' position that no paid benefit time should be included as time supervised. The court discusses below the number of consecutive weeks a subordinate employee must be absent on paid leave before his or her hours no longer count as time supervised.

### D. "Stub" Weeks

The "stub" week issue encompasses situations where a "Y" store manager moves from one store to another in the middle of the workweek due to a transfer, promotion, or demotion. For example, an individual promoted to, or demoted from, a "Y" store manager position on a Wednesday or a Thursday could not have supervised 80 hours of subordinate time during that partial week. The parties disagree as to whether those weeks should be counted towards the 80/80 Rule.

### II. The Numbers Differentials

This court met with the parties on January 19, 2006 to discuss these issues and attempt to streamline their positions. At that time, Plaintiffs identified 871 managers in the subclass entitled to between $3.5 million and $15 million. RadioShack insisted that the proper figure was 538 managers in the subclass entitled to a total of $2,281,469.55. During the course of discussions, Plaintiffs agreed to concede the "stub" week issue and exclude all such weeks from the analysis. The parties also agreed to exchange lists comparing the number of "Y" store managers included in the subclass under the following scenarios[3]:

1. 98-day tenure, no benefits
2. 105-day tenure, no benefits
3. 98-day tenure, two-week absence
4. 105-day tenure, two-week absence
5. 98-day tenure, four-week absence
6. 105-day tenure, four-week absence

---

[3] As noted, the court rejects Plaintiffs' position that all paid benefit time should be excluded from time supervised as inconsistent with the district court's observations on this matter. The court nonetheless includes that scenario here to present a complete representation of the parties' positions.

The parties' respective charts produced the following results:

|  | No Benefits 98 Days | No Benefits 105 Days | 2 Weeks 98 Days | 2 Weeks 105 Days | 4 Weeks 98 Days | 4 Weeks 105 Days |
|---|---|---|---|---|---|---|
| Plaintiffs | 756 | 750 | 629 | 624 | 629 | 624 |
| Defendant | 672 | 660 | 546 | 537 | 546 | 537 |
| Difference | 84 | 90 | 83 | 87 | 83 | 87 |

The court asked the parties to determine the source of the differences in their figures and to submit an explanation to the court, along with a final summary of their positions.

By letter dated March 31, 2006, RadioShack explained that it has identified 49 class members who should be excluded from Plaintiffs' list because (1) there is no evidence such individuals actually opted into this action; (2) the individuals have expressly opted out of the action; or (3) the individuals have no time worked in the two-year claim period. RadioShack claims that ten additional class members on Plaintiffs' list had their claims adjudicated in a prior action before the Eastern District of Pennsylvania. *See Goldman v. RadioShack Corp.*, No. Civ. A. 03-0032. The remaining individuals, RadioShack argues, do not qualify for summary judgment under the 80/80 Rule. (Letter from J. McNeill of 3/21/06, at 7.) Plaintiffs' March 31, 2006 letter did not provide the court with any comparable explanation. During a telephone status on March 31, 2006, however, both parties agreed that once the court adopts a formula, they will likely be able to reach an agreement as to the final numbers calculations with little or no need for further court intervention.

III. Analysis

Having thoroughly reviewed the parties' positions, the court concludes that the number of "Y" store managers included in the subclass should be determined as follows. First, all "stub" weeks should be excluded from the analysis. As noted, the parties have agreed on this issue based on their mutual understanding that it does not affect very many subclass members. Second, this court concludes that three to four months equates to 13 to 17 weeks (91 to 119 days). *See,*

e.g., *United States v. Eisen*, No. CR-90-00018, 1990 WL 164681, at *9 (E.D.N.Y. Oct. 19, 1990) ("[T]he prosecutor has estimated the trial length at approximately thirteen weeks, or three months . . . ."); *United States v. Darwich*, 337 F.3d 645, 664 n.27 (6th Cir. 2003) ("1 lb. x 7 days x *13 weeks (3 months)* = 91 lbs. (41.2 kilograms).") (emphasis added). The court thus finds that a store-by-store analysis should apply where a class member has worked at a store for at least 15 weeks (105 days), which represents the midpoint of 13 to 17 weeks.

As for time worked in a store that extends both pre- and post-claim period, the court finds that the analysis should be limited to time worked during the claim period. The court recognizes that this will result in some class members either being included or excluded from the subclass, but the same is true of RadioShack's extended analysis. The court thus finds that limiting the analysis to the claim period will provide the most efficient and fair results in determining subclass members. Finally, paid benefit time should be excluded as time supervised when a subordinate employee is absent for four consecutive weeks. In the court's view, four weeks best comports with the district court's concern that a "Y" store manager has not "supervised" an employee who has been absent for "weeks and weeks."

As noted, Judge Pallmeyer has reserved the willfulness issue for trial. Thus, a final calculation of damages for the Subclass Plaintiffs will also need to await the trial and a determination whether the proper claim period is two or three years. The court recommends appointing a special master to determine whether the fluctuating workweek method properly applies to each individual subclass member, and to calculate the exact amount of damages due. The court notes, however, that an individual assessment regarding the fluctuating workweek may not be feasible given the large number of potential subclass members (the parties preliminarily estimate a subclass of between 537 and 624 members), and urges the parties to reach a compromise on this issue.

## CONCLUSION

To summarize, for the reasons stated above, the parties should utilize the following method of determining which "Y" store managers fall within the subclass of Plaintiffs: (1) all "stub" weeks should be excluded from the analysis; (2) a store-by-store analysis should apply where a class member has worked at a store for at least 15 weeks (105 days); (3) the liability analysis should be limited to the claim period and should not include time worked at a store prior to the start of the claim period; and (4) paid benefit time should be excluded as time supervised when a subordinate employee is absent for four consecutive weeks. The court recommends that the district court appoint a special master to determine the amount of, and the proper method of calculating, damages due to each individual subclass member once the willfulness issue has been decided at trial. The court stresses, however, that given the large number of potential subclass members, it may prove impractical to assess the applicability of the fluctuating workweek method on an individual basis.

Counsel has ten days from the date of service of this Court's opinion to file objections with the Honorable Rebecca R. Pallmeyer. See FED. R. CIV. P. 72.

ENTER:

Dated: APR 0 6 2006

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge